PRIMA PAINT CORPORATION *v.* AMMERMAN,
INDIVIDUALLY, ETC. ET AL.

[No. 193, September Term, 1971.]

*Decided February 9, 1972.*

The cause was argued before HAMMOND, C. J., and MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Maurice C. Pincoffs, Jr.,* for appellant.

*Arthur A. Anderson, Jr.,* for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

The parties are in agreement that the trial judge's statement of the facts and the decisive issue in the case cannot be improved on and, although the appellant, the mechanic's lien claimant, strongly disagrees, we find that the judge's conclusion that the appellant had not proved its case to be equally sound. Judge Childs said:

> "In this proceeding to enforce a mechanic's lien for materials supplied, the plaintiff's cause would seem to hinge entirely upon the date of final delivery of the last paint delivered by the plaintiff for use by defendant's predecessor in title. Evidence of this particular delivery depends entirely upon the plaintiff's business records, for no one on behalf of the plaintiff or one connected in any way with the transaction professed to have personal knowledge or recollection of the details of the final shipment. There is no question as to the receipt of the notice or as to the authority of the person to whom the notice was sent or as to the legal sufficiency of the notice, itself.
>
> "One Jan Strompf, trading as Jan Strompf Construction Company, in 1967 was engaged in constructing an apartment complex known as

Fountain Green Gardens in Laurel, Maryland. He had subcontracted the painting for this project to Mr. Gerald Golden, trading as G and H Painting Company. Mr. Golden at the time was involved in several other contracts in the Laurel and Baltimore areas. Strompf became a bankrupt, and Prima went unpaid. A notice by Prima Paint Corporation dated August 16, 1967 to the defendant Fountain Green Corporation, predecessor in title of the defendant Ammerman, was received on the same date. Article 63, Section 11 of the *Annotated Code of Maryland*, 1968 Replacement Volume, requires a person furnishing materials to give notice in writing to an owner within ninety days after furnishing the materials. Consequently, if the last delivery by the plaintiff were actually made on May 17th, the notice was one day late. (May 17, 1967 and August 16, 1967 both fell on Wednesday. Neither day was a legal holiday.) However, if the delivery were made on May 18th the notice was timely. Plaintiff's case must stand or fall upon its invoice number 6953, Plaintiff's Exhibit 3, which bears a typed order date of May 18th, 1967 and a handwritten date of invoice May 17, 1967.

"Plaintiff's counsel urges upon the court that the date of invoice is actually May 19, 1967. This the court cannot accept. The handwritten figure seven appears at least six other times in the unit price and extension columns. Likewise, in the extension column appears the figure nine. The person who wrote the figures in the date of invoice block and the extension column had a distinctive manner in writing the figure seven and when all sevens appearing on the invoice are compared (for instance the figure 4697 appears in the extension column, the fifth line from the top) the figure nine and the figures

seven are completely distinctive and dissimilar. The court must therefore attempt to resolve the question as to when delivery was actually made. Invoice 6953 bears the notation "pick up." An uncompleted copy of this invoice was signed by Earl Hunt who testified that he at the time was picking up paint for G and H but he could not recall the date.

\* \* \*

"The burden of proving the cause of action to enforce mechanic's lien lies upon the claimant. *District Heights Apartments v. Nolan Company*, 202 Md. 43. Likewise, where there is an ambiguity in a document it will be most strongly construed against the one who prepared it. *Kelly Construction Company v. Sanitary Commission*, 247 Md. 241.[1] \* \* \*

\* \* \*

"In applying these various rules of construction this court holds that the plaintiff has not met its burden of proof. Plaintiff, as the author

---

1. At this point Judge Childs quoted § 37 of Art. 35 of the Code, which provides that all typewriting done for any purpose in any instrument "shall have the same legal force, meaning and effect as writing, and writing shall be taken and held to include typewriting \* \* \*," and then cited Schapiro v. Chapin, 159 Md. 418, saying that the case "ignored [§ 37 of Art. 35] and held that a handwritten portion of a contract prevailed over a typewritten portion." Actually, the case held that handwritten and typewritten portions of a contract prevailed over the printed portions. Appellant, pointing this out, says it shows the trial judge based his rejection of its claim on a mistaken theory of law. The argument is unsound because Judge Childs did not find that the handwritten notation "5/17/67" showed that the delivery was made that day rather than on the next day, the notation as to which was typewritten. Rather, the essentiality of his finding was that appellant had not met its burden of showing that delivery had been made on May 18, or later, and this being so it would be immaterial on what earlier day it had been made.

Section 37 of Art. 35 has not been cited in any case since its passage 72 years ago, and as far as commercial paper is concerned, would appear to have been superseded by Code (1957, 1964 Repl. Vol.), Art. 95B, § 3-118(b), which provides:

"Handwritten terms control typewritten and printed terms, and typewritten control printed."

The rule of 3-118(b) follows the general law. See 17 Am. Jur. 2d § 271, p. 679.

of the document offered to support its case, must have the ambiguity inherent in the invoice construed against it. The handwriting must prevail. While it is possible to have a date of invoice differ from a date of order, it is illogical to assume that a delivery could be invoiced *before* it was ordered unless plaintiff possessed powers of clairvoyance. An invoice must, of necessity, be made coincident with or subsequent to an order but certainly not *before*. The court notes that invoice number 6952, (Exhibit 2), the invoice immediately preceding the one in question, bears an order date of May 16, 1967, and invoice date of May 17, 1967. Moreover, the sum of $48.38, the charge made on invoice 6953, was actually posted on the plaintiff's books of account on May 17, 1967 (Exhibit 1). There was no explanation as to how such a thing could occur under plaintiff's procedures if the order were actually made on May 18th. These facts are further indication to the court that the typewritten date of May 18, 1967 was in error which could have arisen either through a mistake by the typist in determining the date, or in striking the wrong key. Accordingly, the court rules that the plaintiff's bill of complaint must be dismissed."

We think that the evidence presented to Judge Childs tended to indicate that the crucial delivery was made on the untimely day of May 17. That, however, was not the decisive question. The decisive question was whether delivery had been made on the timely day of May 18, or later, and the appellant bore the burden of answering the question to the satisfaction of the trier of fact. We think Judge Childs did not err in finding that appellant had not met that burden.

*Judgment affirmed, costs to be paid by appellant.*