685 A.2d 799

**F. SCOTT JAY & CO., INC.**

**v.**

**John VARGO, et al.**

**No. 29, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Nov. 29, 1996.

Michael P. Darrow (Hillman, Brown & Darrow, P.A. on the brief) Annapolis, for Appellant.

Douglas R. Thomas (Douglas R. Thomas & Associates, P.C. on the brief) Beltsville, for Appellees.

Argued before FISCHER, SALMON and EYLER, JJ.

EYLER, Judge.

This case involves an interpretation of § 9–104(f)(3) of the Real Property Article of the Maryland Code, which provides that a subcontractor's mechanic's lien against a single family residence shall not exceed the amount that the owner is indebted to the general contractor at the time the owner receives notice of the lien. The issue of first impression we now consider is whether the subcontractor or the owner bears the burden of proving the extent of indebtedness of the owner at the time of notice. We hold that the subcontractor bears the burden of proof, and, consequently, we shall affirm the judgment of the trial court.

Appellant, F. Scott Jay & Co., Inc., a subcontractor furnishing materials, claims that the trial court erred in denying its claim for a mechanic's lien against the property of appellees, John and Debra Vargo. Appellant, in Count One of its complaint, sought to establish a mechanic's lien in the amount of $4,343.46 plus prejudgment interest and, in Count Two, sought a judgment in the same amount plus attorney's fees against the principals of Joint Venture Custom Homes, the general contractor, based on their guarantee of the debts of Joint Venture Custom Homes. Appellant alleged that it sold certain specialty wood products to the general contractor for use in appellee's property, new construction of a single-family residential dwelling; that it was incorporated in the dwelling; and that the claim was for the amount due. The complaint further alleged that a "notice to owner of intention to claim a lien" was sent certified mail, return receipt requested, and received on June 2, 1995, pursuant to § 9–104. Appellant filed an affidavit in support of its petition to establish and enforce a mechanic's lien, and a motion for summary judgment. By consent, an interlocutory order was entered, dated July 24, 1995, establishing a mechanic's lien pursuant to RP § 9–106(b)(3). Following a bench trial in the Circuit Court for Anne Arundel County on November 15, judgment was entered in favor of appellees.

Prior thereto, on August 23, summary judgment was entered in favor of appellant against the principals of the general contractor in the amount of $4,343.46. The evidence below will be discussed as we deal with the issues presented.

Appellant noted a timely appeal and presents two issues for our consideration:

1. Did the Court err when it found as a matter of law that *Ridge Sheet Metal Co., Inc.* [1] required the Court to find for [appellees] when the Court acknowledged that [appellees] had not proven the amount in dispute between them and the general contractor?

2. Did the Court err when it failed to find for [appellant] because of [appellees'] failure to file an affidavit in response to [appellant's] Complaint?

## Discussion

### A.

Section 9–102 of the Real Property Article, which provides for the establishment of mechanics' liens, states in pertinent part that "[e]very building erected . . . is subject to establishment of a lien in accordance with this subtitle for the payment of all debts, without regard to the amount, contracted for work done for or about the building and for materials furnished for or about the building. . . ." A subcontractor is not entitled to a mechanic's lien unless it gives the owner notice of the lien within 90 days of doing the work or furnishing the materials. § 9–104(a) and (b). Further, when, as here, the property involved is a single family dwelling erected on the owner's property for use as the owner's own residence, the notice must be received by the owner prior to the time that the owner has made full payment to the contractor. § 9–104(b).

Finally, § 9–104(f)(3) provides in pertinent part as follows: Notwithstanding any other provision of this section to the contrary, the lien of the subcontractor against a single

---

1. *Ridge Sheet Metal Co., Inc. v. Morrell,* 69 Md.App. 364, 517 A.2d 1133 (1986).

family dwelling being erected on the land of the owner for his own residence shall not exceed the amount by which the owner is indebted under the contract at the time the notice is given.

It is undisputed that appellant sold materials to the general contractor that were incorporated into appellees' house, and that appellant was not paid the amount claimed. Appellant acknowledges that the subject property is a single family dwelling constructed for use as the appellees' own residence. Accordingly, § 9–104(f)(3) applies. Appellant asserts, however, that appellees did not make all of the payments originally contemplated by the building contract. Appellant contends that appellees, by establishing that the general contractor left the job before the work was complete, and that they had to expend additional sums to complete the construction, merely proved the existence of a dispute with the general contractor, and did not produce enough evidence to defeat appellant's mechanic's lien.

Appellant asserts that the trial court read *Ridge Sheet Metal Co., Inc. v. Morrell,* 69 Md.App. 364, 517 A.2d 1133 (1986), to require a finding in favor of the homeowner as a matter of law whenever a dispute between the homeowner and the general contractor exists. Appellant argues that such a reading of *Ridge Sheet Metal* is incorrect and that the homeowner must affirmatively demonstrate that he or she was not indebted to the contractor at the time of notice in order to defeat the lien. According to appellant, this burden is not met merely by showing that an amount was not payable under a draw schedule. Appellant's argument expressly assumes that it was the appellees' burden to prove that they were not indebted to the general contractor at the time they received notice of appellant's lien. Before we address this assumption, we will briefly review the holding of *Ridge Sheet Metal.*

*Ridge Sheet Metal,* similar to this case, involved a situation in which the general contractor had abandoned the contract prior to completion of construction. Under the express terms of the contract, the homeowners were entitled to keep a

twenty thousand dollar retainage. The subcontractor sought to assert a mechanic's lien up to the amount of this retainage, arguing that the homeowners had received the benefit of the subcontractor's services and that the homeowners would otherwise be unjustly enriched. We held that, because the homeowners were not indebted under the contract at the time they received notice of the lien, the lien was not valid. In that case, we interpreted the phrase "indebted under the contract" to mean a legally enforceable obligation against the homeowners. We agree with appellant that a legally enforceable obligation could exist even if a construction draw is not payable, depending on the terms of the contract and all other relevant facts and circumstances.

■ In *Ridge Sheet Metal,* the evidence regarding the indebtedness of the homeowners was undisputed, and we did not consider which party has the burden of proving the extent of indebtedness. In this case, the extent of the homeowners' indebtedness is very much in dispute. In order to address appellant's implicit claim that appellees have failed to meet their burden of proof, we now turn to that issue and hold that where a subcontractor seeks to establish a lien against a single family residence, it is the subcontractor's burden to demonstrate the extent to which the homeowner was indebted to the general contractor at the time that the homeowner received notice of the lien. This information would normally be obtained through discovery.

A mechanic's lien is a creature of statute, and there is no entitlement to a lien beyond that created by statute. *Caton Ridge, Inc. v. Bonnett,* 245 Md. 268, 225 A.2d 853 (1967); *Giles & Ransome, Inc. v. First Nat'l Realty Corp.,* 238 Md. 203, 208 A.2d 582 (1965); *Freeform Pools, Inc. v. Strawbridge Home for Boys, Inc.,* 228 Md. 297, 179 A.2d 683 (1962). Section 9–104(f)(3) plainly provides that a subcontractor is entitled to a lien only to the extent of the homeowner's indebtedness to the general contractor at the time the homeowner receives notice of the lien. Under the express terms of the statute, lack of indebtedness is not an affirmative defense to be proven by the

homeowner. Rather, the unambiguous language of § 9–104(f)(3) clearly assigns to the subcontractor the burden of proving indebtedness. Moreover, our interpretation of this statute is borne out by a discussion of the statute's history.

It has long been recognized that it is the claimant's burden to establish the validity of its lien. *Continental Steel Corp. v. Sugarman*, 266 Md. 541, 548, 295 A.2d 493 (1972). *Cf.* RP § 14–203(d) (the Maryland Contract Lien Act, which was modeled after the Mechanics' Liens Subtitle, expressly provides that the party seeking to establish the lien has the burden of proof). By contrast, in order to allege a prima facie defense, an owner need only deny the validity of the lien and require the claimant to prove its validity. *Id.* Moreover, the Court of Appeals long has held that the claimant, *as part of its case,* must prove that the requisite notice has been given to the owner. *See, e.g., Prima Paint Corp. v. Ammerman,* 264 Md. 392, 396, 287 A.2d 27 (1972); *Parker v. Tilghman V. Morgan, Inc.,* 170 Md. 7, 19, 183 A. 224 (1936). Lack of notice is not an affirmative defense to the establishment of a mechanic's lien, but instead, the claimant must affirmatively demonstrate that proper notice has been given. *Id.*

Similarly, an owner need only allege that it is a bona fide purchaser for value in order to claim the benefit of the exemption provided in § 9–102(d). *Talbott Lumber Co. v. Tymann,* 48 Md.App. 647, 653, 428 A.2d 1229 (1981). It is the claimant's burden to show that the owner is not a bona fide purchaser for value, and the owner need offer no evidence of his status except in response to evidence first offered by the claimant tending to show that he is not a bona fide purchaser for value. *Id.* at 653–54, 428 A.2d 1229.

Against this backdrop, in 1982, the General Assembly added to the mechanic's lien law a further hurdle, in the form of § 9–104(b) and (f), for cases involving single family dwellings for use as the owner's own residence. Under those sections, the legislature provided that notice must be received by the owner prior to the time the owner makes full payment to the general contractor, § 9–104(b), and that the subcontractor is entitled

to a lien only to the extent that the owner is indebted to the general contractor at the time of the receipt of notice. § 9–104(f)(3). Given this history, we are confident that, had the legislature intended to make lack of indebtedness an affirmative defense, it would have done so by clear and explicit language.

Having determined who bears the burden of proof, we now consider the specifics of this case. The total amount of the contract between the general contractor and appellees was $230,000. Pursuant to the construction loan agreement, the general contractor was to be paid a total of six draws, each payable upon completion of the specified work. As of the time of work stoppage, the general contractor had been paid a total of $155,161.96, or four out of the six draws. The fourth and last draw was paid on April 12, 1995. Draw No. 5 was in the amount of $42,750, and remained unpaid when the general contractor did not complete the work specified.

Appellant, at trial, called Jerry Helvey, an employee of the general contractor, as a witness. Mr. Helvey testified that the general contractor filed a bankruptcy petition on June 9, 1995, and that it had stopped work on the project in question a week to ten days prior to that time. Mr. Helvey testified that all of the work specified for payment of Draw No. 4 had not been completed at the time of that payment. He explained, however, that work had been performed under Draw No. 5 and that this was used to offset the work not completed under Draw No. 4. Additional work subsequently was performed under Draw No. 5. The witness testified that it was a "pretty good assumption that the amount earned under Draw No. 5 was $30,000," but he did not quantify the amount of work that had not been completed pursuant to Draw No. 4. The payment pursuant to Draw No. 5 was not payable because the work had not been completed under Draw No. 5. The witness testified, however, that the value of the total work performed by the general contractor exceeded the amount paid to the general contractor as of the date of work stoppage. The amount was not quantified.

Appellee, Debra Vargo, testified in appellees' case. Ms. Vargo testified that after the general contractor abandoned the job, she and her husband hired some other contractors to complete the construction. Ms. Vargo further testified that, of the construction draws that were remaining, appellees drew down to a little over one thousand dollars to pay for the remaining construction. Ms. Vargo further testified that there was some molding that needed to be done and that the fireplace was not in operation. At appellant's objection, Ms. Vargo was precluded from testifying to the cost of completing this work. Upon consideration of this evidence, the trial court found that the appellees had a legitimate offset against the claims of the general contractor and that, accordingly, the homeowners were not indebted to the general contractor, and therefore, the lien was invalid.

Appellant argues that the trial court misread *Ridge Sheet Metal* and held, as a matter of law, that the existence of a dispute as to indebtedness or the fact that a construction draw was not payable as of the relevant date, prevented a lien. Our reading of the trial court's comments convinces us, however, that the trial court did not misapply the law and based its ruling on a finding of fact that can be overturned only if it was clearly erroneous. The trial court stated:

But in this case, it appears to me that the homeowner has a legitimate offset against the claims of the general contractor; and, therefore, *it is my conclusion that the homeowner is not indebted under the contract to the general contact— to—to the general contractor.* And, therefore, no lien can be claimed. That seems to be very clearly the—purpose of the holding in the *Ridge Sheet Metal Company versus Morrell* case cited by the defendant.

The court will say—say further that the cost of this dispute between the general contractor and the homeowner as to, you know, of course the general contractor is going to say money is owed. The homeowner says that none is owed since you've walked off the job and I have to expend or will have to expend additional monies in order to complete the job.

How much that is, of course, I agree with Mr. Darrow, that necessarily hasn't been proven, but despite that, it seems to me that just by virtue of the *Ridge Sheet Metal* case and its—its interpretation of the statute that I have to deal with here today that if there is a loss, the loss has to be borne by the subcontractor, and why? Well, some of the reasons that are pointed out in the *Ridge Sheet Metal* case are as follows: that the subcontractor can best protect himself against loss very easily under the contract, he can require that there be joint checks paid. The subcontractor can further—is [in] a better position to bear the risk of loss in this type of situation because he is one that's in the trade and is clearly in the better position than the owner to know whether the contractor is in a financially unstable position.

With the legislative intent of 9-104, to put the burden really on the subcontractor as to putting that burden on the homeowner, it seems to me that there is no other conclusion that I could reasonably make in this case. Therefore, the court will deny the mechanic's lien.

(Emphasis added.)

Given that the appellant had the burden of demonstrating the existence and extent of appellees' indebtedness at the time of the notice, we cannot say that the trial court's ruling was clearly erroneous. Indeed, appellant concedes and strenuously argues on appeal that the extent of indebtedness was not proven. Accordingly, we affirm the trial court's judgment.[2]

### B.

■ Appellant's second contention is that the trial judge erred in not entering a final judgment in its favor because of

---

2. As an aside, we note that the building contract was not made a part of this record. Appellant claims that the contract never was introduced. Our review of the record indicates that it was introduced as a defense exhibit but that all the trial exhibits were returned to the parties at the conclusion of the trial. We were advised at oral argument that the contract was before the trial court. Given that the central issue in this case is the extent of the homeowners' indebtedness *under the contract,* we cannot fathom how this point was overlooked.

appellee's failure to file an affidavit pursuant to Md. Rule BG73.b. That rule provides:

*Affidavit or Verified Answer; Failure to File Deemed Admission.*

If the defendant desires to controvert any statement of fact in the petitioner's affidavit he must file an affidavit or verified answer to the show cause order. The failure to file an opposing affidavit or verified answer within the time allowed to answer the order shall constitute an admission for the purpose of the proceedings of all statements of fact in the affidavit supporting the petitioner's claim, but shall not constitute an admission that the petition or affidavit in support thereof is legally sufficient.

Appellant concludes that, based on the admission that the monies claimed were due and owing, a final order should have been entered in appellant's favor. Appellees argue (1) that an admission under BG73 applies to the show cause order only and ceased to have any effect when the parties consented to entry of an interlocutory lien and the scheduling of a hearing on the merits, and (2) that, if the facts in the affidavits are admitted, appellant must nevertheless prove that it is legally entitled to a lien.

We do not agree with appellees' first point. The failure to file an affidavit constitutes an admission for the purpose of all subsequent proceedings. As appellees also point out, however, the admission is only as to the statements of fact in the affidavit supporting the claim. There was no admission that appellees owed money or were indebted to the general contractor as of the time of receipt of notice of intent to lien, nor was there an admission that the affidavit was legally sufficient.

For the reasons stated above, we affirm the judgment entered in favor of appellees.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.