546

720 A.2d 1

Scott JEROME, et al.

v.

WINKLER CONSTRUCTION COMPANY, INC.

No. 81, Sept. Term, 1998.

Court of Special Appeals of Maryland.

Nov. 4, 1998.

Gregory J. Psoras (George Psoras, Jr. on the brief), Towson, for appellants.

T. Bruce Hanley, Towson, for appellee.

Argued before HARRELL, J., and ROSALYN B. BELL and JOHN J. BISHOP, Judges (retired), Specially Assigned.

JOHN J. BISHOP, Judge (retired), Specially Assigned.

Scott Jerome, Barbara Chait, and Richard J. Musser, t/a Musser Construction, Inc. appeal the action of the Circuit Court for Carroll County in granting a Final Order Establishing Mechanic's Lien and denying certain post-judgment motions in favor of Winkler Construction Company, Inc., appellee.

Appellants ask:

I.   Whether the trial court erred when it granted the Mechanic's Lien;

II.  Whether the trial court erred when it refused to vacate the Final Order and to allow Appellants to file a Verified Answer;

III. Whether the trial court erred when it denied Appellants' Motion to file a Mechanic's Lien Release Bond.

Because we reverse on the basis of our disposition of the first issue, we do not address the other issues.

## FACTS

Jerome and Chait entered into a contract with Valley Homes for the construction of a dwelling on their property, described as Lot No. 52, Beaver Creek Estates subdivision, in Carroll County. Musser, a subcontractor of Valley Homes, had, in turn, entered into a sub-subcontract with Winkler to perform certain carpentry work in connection with the construction required under Musser's sub contract. Appellants contend that Winkler failed to complete the work it contracted to do and abandoned the job site. As a result of this alleged breach of the sub-subcontract, Musser claims he had to pay $7,240.00 for labor, materials and to other sub-subcontractors to complete the work that Winkler was required to do.

On June 17, 1997, Winkler filed a Petition to Establish and Enforce Mechanic's Lien for work that it had performed under his sub-subcontract with Musser. Jerome and Chait were properly served. They contacted Valley Homes, who advised them that a Mechanic's Lien Release Bond had been

obtained and that they would be fully protected from Winkler's claim. Accordingly, they did not file a response to the Petition.

Musser filed a Verified Answer to the Petition to Establish Mechanic's Lien and a Counter–Claim for damages caused by Winkler's failure to perform. In the Verified Answer, Musser denied that any monies were due to Winkler and alleged that Winkler had failed to perform. In his counter claim, Musser alleged that Winkler had failed to perform under his contract; and to his counter claim, Musser attached a copy of a certified letter, dated March 13, 1997, he sent to Winkler notifying him of the termination of the contract because of Winkler's abandonment of the job site on March 3, 1997, and because of Winkler's general non-compliance with the sub-subcontract.

In a second letter dated April 21, 1997, and also appended to Musser's Answer, Musser advised Winkler of the details of the alleged breach. In the letter, Musser claimed that he spent $13,000.00 to complete the job; he also showed a deduction of the $5,760.00 still due to Winkler under the subcontract, and enclosed an invoice, addressed to Winkler, in the net amount of $7,240.00, along with documentary support of the claim.

A show cause hearing was held on August 14, 1997. Musser appeared and contested the claim; however, the trial court granted the Final Mechanic's Lien because of the failure by Jerome and Chait to file an answer. The court explained:

Well the Mechanic's Lien Law is pretty darn strict and it . . . provides once the plaintiff takes action on a mechanic's lien that the owner has things that the owner has to do whether it's a justifiable complaint or whether it is not a justifiable complaint, he has to answer under oath and it could be if that were the case, if he'd done what he had to do, then that matter could have been heard today, but you can't just ignore pleadings and then come in and say, well, the real cause of action is between Winkler and the subcontractor (sic), it's not between Winkler and the owners, . . . that's not the way it works.

You have an order, Mr. Hanly.   [Winkler's attorney]

On August 22, 1997, the three appellants filed a Motion to Vacate and Reconsider and, in the alternative, a Petition to File a Mechanic's Lien Release Bond, both of which were denied by the court without a hearing.   A subsequent Motion to Revise the Denial of the Petition to File a Mechanic's Lien Bond was also denied without a hearing.

## DISCUSSION

Md.Code (1997 Supp.), § 9–102(d) of the Real Property Article ("R.P.") provides:

(d) However, a building or the land on which the building is erected may not be subjected to a lien under this subtitle if, prior to the establishment of a lien in accordance with this subtitle, legal title has been granted to a bona fide purchaser for value.

R.P. §§ 9–104(f)(1)(2) and (3) direct:

(1) On receipt of notice given under this section, the owner may withhold, from sums due the contractor, the amount the owner ascertains to be due the subcontractor giving the notice.

(2) If the subcontractor giving notice establishes a lien in accordance with this subtitle, the contractor shall receive only the difference between the amount due him and that due the subcontractor giving the notice.

(3) Notwithstanding any other provision of this section to the contrary, *the lien of the subcontractor against a single family dwelling being erected on the land of the owner for his own residence shall not exceed the amount by which the owner is indebted under the contract at the time the notice is given.*

In *F. Scott Jay Co., Inc. v. Vargo*, 112 Md.App. 354, 685 A.2d 799 (1996), we interpreted these sections to require that the claimant "show that the owner is not a bona fide purchaser for value".   *Id.* at 361, 685 A.2d 799.   The owner is required to

offer no evidence of his status unless there is evidence to the contrary offered by the claimant. *Id.*

In *Jay,* we also interpreted the foregoing to mean that the amount of the lien is limited to the extent to which the owner is indebted to the contractor; and lack of indebtedness is not an affirmative defense required of the owner but a matter of proof by the claimant. We wrote:

> It has long been recognized that it is the claimant's burden to establish the validity of its lien. *Continental Steel Corp. v. Sugarman,* 266 Md. 541, 548, 295 A.2d 493 (1972). Cf. RP § 14–203(d)(the Maryland Contract Lien Act, which was modeled after the Mechanics' Liens Subtitle, expressly provides that the party seeking to establish the lien has the burden of proof). By contrast, in order to allege a prima facie defense, an owner need only deny the validity of the lien and require the claimant to prove its validity. *Id.*

\* \* \*

Similarly, an owner need only allege that it is a bona fide purchaser for value in order to claim the benefit of the exemption provided in § 9–102(d). *Talbott Lumber Co. v. Tymann,* 48 Md.App. 647, 653, 428 A.2d 1229 (1981). It is the claimant's burden to show that the owner is not a bona fide purchaser for value, and the owner need offer no evidence of his status except in response to evidence first offered by the claimant tending to show that he is not a bona fide purchaser for value. *Id.* at 653–54, 428 A.2d 1229.

Against this backdrop, in 1982, the General Assembly added to the mechanic's lien law a further hurdle, in the form of § 9–104(b) and (f), for cases involving single family dwellings for use as the owner's own residence. Under those sections, the legislature provided that notice must be received by the owner prior to the time the owner makes full payment to the general contractor, § 9–104(b), and that the subcontractor is entitled to a lien only to the extent that the owner is indebted to the general contractor at the time

of the receipt of notice. § 9–104(f)(3). Given this history, we are confident that, had the legislature intended to make lack of indebtedness an affirmative defense, it would have done so by clear and explicit language.

*Id.* at 361–62, 685 A.2d 799.

■ There is no entitlement to a lien unless there is strict compliance with the statute. *Jay,* 112 Md.App. at 360, 685 A.2d 799. The failure to file a response does not cause a defective verified petition or the absence of supplemental proof of a required element to be in compliance by default. *Westpointe Plaza II Ltd. Partnership v. Kalkreuth Roofing & Sheet Metal, Inc.,* 109 Md.App. 569, 579–80, 675 A.2d 571 (1996). In *Westpointe,* we explained:

A circuit court judge must follow a two-step process in awarding a mechanics' lien. First, the circuit court judge has to determine whether there is a factual dispute. Second, the judge has to determine whether the facts as resolved entitled the claimant to the lien as a matter of law.

In the instant case, Kalkreuth and the circuit court judge confused the effect Westpointe's failure to file an answer to the show cause order had on the two-step process. The circuit court believed, and Kalkreuth argues, that section 9–102(a) is a defense that has to be raised by an owner in its answer. Pursuant to this argument, if the "section 9–102(a) defense" is not pled in the answer then it is waived and the court can award the mechanics' lien as a quasi-default remedy. Under this approach, all property would be subject to attachment if the owner did not raise this defense. The "section 9–102(a) defense" argument, however, not only confuses the procedural steps involved in a mechanics' lien proceeding, but it is inconsistent with section 9–102(a)'s legal requirements for the award of a mechanics' lien.

*Id.* at 578, 675 A.2d 571.

■ The petition *sub judice* is not in compliance with the statute. It does not contain any information with respect to whether the building is a single family dwelling. It also fails to allege the amount of the indebtedness of the property

owners to the general contractor at the time notice of intent to seek the lien was given, which, according to *Jay,* "is not an affirmative defense to be proven by the homeowner." *Id.* at 360–61, 685 A.2d 799. Rather, as *Jay* notes, "the unambiguous language of § 9–104(f)(3) clearly assigns to the subcontractor the burden of proving indebtedness." *Id.* at 361, 685 A.2d 799. Finally, P.R. § 9–102(a) limits mechanics' liens to those buildings "erected . . . repaired, rebuilt or improved to the extent of 15 percent of [their] value[.]" As *Westpointe* makes clear, this fact is one that the claimant has the burden of proving; and, as such, the claimant also has the burden of making such an allegation in his pleading. *Westpointe,* 109 Md.App. at 579–80, 675 A.2d 571. Here, Winkler failed to make such an allegation in its complaint. Moreover, as the transcript of the August 14, 1997 show cause hearing reflects, no additional proof was offered by Winkler.

Winkler argues that there is nothing alleged in the Petition or in the record indicating that the subject building was intended to be the owner's residence or that the owners were not indebted to the contractor. Based on the case law we have discussed, *supra,* it is the responsibility of the petitioner to provide the status of the building and the indebtedness of the owners to the contractor. It appears that there is no evidence, with regard to the above requirements of the statute, in the Petition because it was omitted by Winkler for the reason contained in Paragraph 8 of the Petition:

> Other material papers existing which are not attached hereto, include but are not limited to: payment requisitions, correspondence between Winkler and the Contractor, and plans and specifications for the Project. Said papers are absent because of their voluminous number and would not justify their inclusion in this Petition.

That the specific documents withheld may have provided the court with evidence that could have defeated the lien gives this Court some concern. It is clear from the documents Musser produced that the same ones were available to Winkler. These would have made the trial court aware that there was a

dispute whether Musser owed Winkler any money under the sub-subcontract. Had all the documents available to Winkler been attached to his Petition, the trial court may not have granted the lien.

Maryland Rule 12–304. Proceedings provides:

(a) *Court Review.* The court shall review the complaint and any exhibits and may require the plaintiff to supplement or explain any of the matters set forth in the complaint and exhibits.

(b) *Order.* (1) Entry; contents. If the court determines that there is a reasonable ground for the lien to attach, it shall enter an order directing the defendant to file an answer under oath on or before a date indicated in the order, showing cause why a lien for the amount claimed should not attach to the land described in the complaint, provided that a copy of the order together with copies of the pleadings and exhibits filed shall have been served on the defendant by the deadline for service specified in the order. The order also shall (A) set a date for hearing no later than 45 days from the date of the order, (B) advise the defendant of the defendant's right to appear and present evidence at the hearing, and (C) warn the defendant that if the defendant fails to file a timely answer, the facts set forth in the plaintiff's complaint shall be deemed admitted and the hearing waived, and the court may enter an order establishing the lien.

\* \* \* \*

(c) *Answer; failure to file deemed admission.* A defendant may controvert any statement of fact in the plaintiff's complaint by filing an answer under oath. *The failure to file an answer within the time allowed by the order shall constitute an admission for the purpose of the action of all statements of fact in the plaintiff's complaint, but shall not constitute an admission that the complaint is legally sufficient.*

(d) *Hearing.* If the defendant fails to answer within the time allowed by the order, the court may at any time thereafter, without hearing and without further notice to the defendant, enter an order in conformity with section (e) of this Rule. If the defendant files an answer in compliance with the order, a hearing shall be held as scheduled.

(e) *Relief granted.* (1) Judgment if no genuine dispute.— (A) If the pleadings and admissions on file and any evidence show that there is no genuine dispute as to any material fact and that the lien should attach as a matter of law, the court shall enter a judgment establishing the lien. If it appears that there is no genuine dispute as to a portion of the lien claim, the court shall enter an order establishing the validity of the lien as to that portion and the action shall proceed only on the disputed amount of the lien claim.

(B) If the pleadings and admissions on file and any evidence show that there is no genuine dispute as to any material fact and that the plaintiff, as a matter of law, has failed to establish a right to a lien, a judgment shall be entered denying the lien.

(2) Interlocutory order if probable cause. *If the court determines from the pleadings and admissions on file and any evidence that a judgment under subsection (e)(1)(A) should not be entered, but that there is probable cause to believe the plaintiff is entitled to a lien, the court shall enter an interlocutory order that:*

(A) establishes a lien;

(B) describes the land to which the lien attaches;

(C) states the amount of the claim for which probable cause is found;

(D) specifies the amount of a bond which may be filed by the defendant to have the land released from the lien; and

(E) assigns a date within six months for a trial of all matters that may be necessary to adjudicate the establishment of the lien.

The owner or any other person interested in the land may move at any time for modification or dissolution of the lien established by the interlocutory order.

(3) Probable cause not found. If no judgment or interlocutory order is entered under subsections (1) and (2), the court shall enter an order that the portion of the complaint seeking to establish the lien be dismissed unless the plaintiff, within 30 days thereafter, files a written request that the portion of the complaint seeking to establish the lien be assigned for trial.

(4) Bond by plaintiff. In an interlocutory order entered under subsection (2) of this section, the court may require the plaintiff to file a bond in an amount that the court determines to be sufficient for damages, including reasonable attorney's fees. The lien shall not attach until any required bond is filed.

(5) Trial. At the conclusion of the action a judgment shall be entered either continuing or terminating a lien established by an interlocutory order, or establishing or denying the lien.

We have set out the forgoing to clarify the dependence that the court must place in the integrity of the pleadings and thus in the pleader. The stakes are very high to the homeowner in a Mechanics' Lien procedure and the court needs to be confident in the integrity of the contents of the pleading.

■ During oral argument before this Court, appellee argued that its verified complaint was in strict accordance with Md. Rule 12–302(a) and (b). We agree; however, because the appellee was in possession of documentary information that would have, at the least, given the court reason to pause, we question whether the petitioner in such a verified pleading should deliberately withhold information of that sort. A pleading in a mechanics' lien case is subject to the same scrutiny as any other verified pleading. If the pleader, in such a case, has information that is contrary to its sworn statements in the verified pleading, may it simply ignore the contrary evidence and couch its pleading in a manner that,

because of the withheld information, might mislead the court? We hold that it may not. *See* Rule 3.3 of the Maryland Rules of Professional Conduct, entitled "Candor Toward the Tribunal."

■ In the case *sub judice* the court reviewed the complaint and the exhibits and, based solely on the failure of the property owners to file a verified response, entered a judgment establishing the lien. The court concluded that the failure to file the required verified response automatically entitled the appellee to the lien.

In doing so, the court failed to comply with mechanics' lien case law and the directions given in Rule 12–304(c), (d), and (e). When the court granted the lien, there was not sufficient evidence before it to support that action. Because of the state of the pleadings and admissions before the court, sub-section (e)(2) was operative and should have been invoked. That subsection provides that "[i]f the court determines from the pleadings and admissions on file and any evidence that a judgment under subsection (e)(1)(A) should not be entered, but that there is probably cause to believe the plaintiff is entitled to a lien, the court shall enter an interlocutory order" that would establish a lien and specify "the amount of the bond which may be filed by the defendant to have the land released from the lien...."

The foregoing is the procedure that the court was required to follow in this case. We reverse the judgment and remand the case for the court to proceed in accordance with this opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**APPELLEE TO PAY COSTS.**