734 A.2d 212

**WINKLER CONSTRUCTION COMPANY, INC.**

v.

**Scott JEROME, et al.**

**No. 157, Sept. Term, 1998.**

Court of Appeals of Maryland.

Aug. 2, 1999.

232

T. Bruce Hanley, Towson, for petitioner.

George Psoras, Jr. (Gregory J. Psoras on brief), Towson, for respondents.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL, and ROBERT L. KARWACKI (retired, specially assigned), JJ.

WILNER, Judge.

Maryland Code, § 9–102 of the Real Property Article provides, in relevant part, that every building that is either newly erected or repaired to the extent of 15% of its value is subject to a lien—a mechanic's lien—for the payment of all debts contracted for work done and materials supplied for or about the building. That includes debts owing to subcontractors who have no privity with the owner of the property and whom the owner may not even know worked on or supplied materials for the building. Section 9–104(a)(2), however, which is part of the statute requiring a subcontractor to give notice to the owner of the subcontractor's intent to claim a lien, provides that a subcontractor doing work or furnishing materials for a single family dwelling being erected on the owner's land for the owner's own residence is not entitled to a lien unless the owner has not made full payment to the prime contractor prior to receiving notice of the subcontractor's claim. Section 9–104(f)(3) further specifies that the amount of any lien "shall not exceed the amount by which the owner is indebted under the contract [with the prime contractor] at the time the notice is given."

The application of § 9–104(a)(2) and (f)(3) hinges on the establishment of four facts: (1) that the building in question is a single family dwelling; (2) that it is being erected on the land of the owner for use as the owner's own residence; (3)

that, at the time the subcontractor's notice is given, the owner has not made full payment to the prime contractor; and (4) the amount of the owner's indebtedness. The issue before us is whether, and to what extent, the third and fourth of those facts must be alleged and shown by the owner, in order to prevent a lien from being established or, conversely, are conditions to the claimant's remedy that must be negatived by the lien claimant, as a matter of pleading, proof, or both. The Court of Special Appeals held that they were a matter of both and reversed an order entering a mechanic's lien in favor of petitioner. *Jerome v. Winkler*, 123 Md.App. 546, 720 A.2d 1 (1998). We disagree, at least in part.

## BACKGROUND

The relevant background of the case can best be understood in the light of the procedural requirements established by the General Assembly and this Court for the obtaining of a mechanic's lien by a subcontractor, and it is therefore appropriate to begin by summarizing those required procedures.[1]

Section 9–104(a) provides that a subcontractor doing work or furnishing materials for a single family dwelling being erected on the owner's land for use as the owner's own residence "is not entitled to a lien under this subtitle" unless (1) within 120 days after doing the work or furnishing the materials, the subcontractor gives written notice to the owner of its intention to claim a lien, and (2) the owner has not made full payment to the contractor prior to receiving the notice. Section 9–104(b) sets forth the form of notice that must be given, or substantially given, by the subcontractor. The form notice includes a description of the building and the work performed or materials furnished, an averment of the amount allegedly due to the subcontractor, and a requirement that the notice be signed under penalty of perjury. Section 9–104(c)

---

1. Unless otherwise specified, all statutory references are to the Real Property Article. Unless quoting from another source, we shall use the term "subcontractor" to include all those who provide labor or material for the building at the request of someone other than the owner or the owner's agent and thus are not in contractual privity with the owner.

declares the notice effective (meaning effectively given, rather than effective in content) if personally delivered or sent by registered or certified mail, return receipt requested.

Section 9–105 requires, as a condition of establishing a lien, that a petition (which Rule 12–302 designates as a complaint and which we shall hereafter refer to as a complaint) [2] be filed in the circuit court where the land, or any part of the land, is located, within 180 days after the work has been furnished or the materials provided. Section 9–105(a)(1) and Rule 12–302(b) set forth the information that must be contained in the complaint—the name and address of the plaintiff and of the owner/defendant, the nature or kind of work done or the kind and amount of materials provided, the name of the person for whom the work was done or to whom the materials were provided, the amount claimed to be due (less any credit the plaintiff recognizes), a description of the land and a description adequate to identify the building, and, if the plaintiff is a subcontractor, facts showing that the notice required under § 9–104 was properly given. Section 9–105 and Rule 12–302(b) require that the complaint be under oath and that it be accompanied by originals or copies of papers constituting the basis of the lien unless their absence is explained in the affidavit.

Section 9–106 and Rule 12–304 prescribe the procedure to be followed once a complaint is filed. Section 9–106(a) and Rule 12–304(a) direct the court to review the complaint and exhibits and allow it to require the plaintiff to supplement or explain any of the matters set forth in those documents. If, from that review, the court determines that there is a reasonable ground for the lien to attach, it must enter an order directing the owner to file an answer under oath showing cause why a lien in the amount claimed should not attach.

---

**2.** The statute and the Rules are not identically worded. Most of the differences are matters of style. The Rules, for example, designate the parties as plaintiff and defendant rather than as petitioner and owner and refer to the initial pleading as a complaint rather than a petition. We shall use the terminology of the Rules, which is more consistent with the terminology generally applicable to judicial proceedings.

Rule 12–304(b) specifies that the order must (1) set a date for a hearing no later than 45 days after the date of the order, (2) inform the owner of a right to appear at the time stated in the order and present evidence at the hearing, and (3) warn that, if the owner fails to file a timely answer, the facts set forth in the complaint will be deemed admitted, a hearing will be waived, and the court may enter an order establishing the lien. Consonant with that advice and warning, the statute and the Rule permit the owner to controvert any statement in the complaint by filing an answer under oath. The statute, § 9–106(a)(2), is somewhat more direct in this regard, stating that, if the owner desires to controvert such a statement, the owner "must file an affidavit in support of his answer showing cause." Both the statute and the Rule make clear that the failure to file a timely answer shall constitute an admission, for purposes of the action, of all statements of fact in the complaint, but shall not constitute an admission that the complaint is legally sufficient.

If the defendant files a timely answer showing cause why a lien should not be established in the amount claimed, the matter must be set for hearing. § 9–106(a)(3); Rule 12–304(d). If such an answer is not filed, however, "the court may at any time thereafter, without hearing and without further notice to the defendant, enter an order in conformity with section (e) of [Rule 12–304]." Rule 12–304(d). Upon the evidence developed at a hearing or, if a hearing is waived, upon the pleadings and affidavit on file and any admissions arising from the failure of the owner to respond, the court must proceed in one of five ways:

(1) If the pleadings, admissions, and evidence show that there is no genuine dispute of material fact and that the lien, as claimed, should attach as a matter of law, the court shall enter a *judgment* establishing the lien in the amount claimed. § 9–106(b)(1); Rule 12–304(e)(1)(A).

(2) If the pleadings, admissions, and evidence show that there is no genuine dispute as to a portion of the lien claimed [and that a lien in that partial amount should attach as a

matter of law],[3] the court shall enter an *interlocutory order* establishing the validity of the lien as to that portion, and the action shall then proceed only on the disputed amount of the lien claim. § 9–106(b)(1); Rule 12–304(e)(1)(A).

(3) If the pleadings, admissions, and evidence show that there is no genuine dispute of material fact "and that the plaintiff, as a matter of law, has failed to establish a right to a lien," a *judgment* shall be entered denying the lien. § 9–106(b)(2); Rule 12–304(e)(1)(B).

(4) If, from the pleadings, admissions, and evidence, the court determines that a judgment establishing the lien in the full amount claimed should not be entered but that there is probable cause to believe that the plaintiff is entitled to a lien in some amount, the court shall enter an interlocutory order that (i) establishes a lien, (ii) describes the land to which the lien attaches, (iii) states the amount of the claim for which probable cause is found, (iv) specifies the amount of a bond which may be filed by the defendant to have the land released from the lien, and (v) sets a date within six months for trial of all matters necessary to adjudicate the establishment of the lien. § 9–106(b)(3); Rule 12–304(e)(2).[4]

(5) If neither a judgment nor an interlocutory order is entered under Rule 12–304(e)(1) or (2), the court shall enter an order that the portion of the complaint seeking to establish a lien be dismissed unless the plaintiff, within 30 days, files a written request that that part of the complaint be set for trial. Rule 12–304(e)(3). There is no comparable provision to this section of the Rule in § 9–106.

---

**3.** The bracketed language is not in either the statute or the Rule but is necessarily implicit.

**4.** Although not specified in either the statute or the Rule, we assume that this provision operates as well when the court is unable to enter a partial lien under § 9–106(b)(1) and Rule 12–304(e)(1)(A), either because there is some genuine dispute of material fact or because the court, though finding probable cause to believe that the plaintiff is entitled to a lien in some amount, is not convinced that the plaintiff is entitled to a lien as a matter of law.

Whichever of these options is chosen by the court, Rule 12–304(e)(5) requires that, at the conclusion of the action, a judgment must be entered either continuing or terminating a lien established by interlocutory order or establishing or denying the lien.

On June 17, 1997, petitioner, Winkler Construction Company, Inc., filed a two-count complaint in the Circuit Court for Carroll County. In Count I, it sought to establish a mechanic's lien against certain property of respondents, Scott Jerome and Barbara Chait. Winkler averred that, pursuant to a "trade agreement" with Richard J. Musser, t/a R.J. Musser Construction, Inc., it had performed work and provided materials for a newly constructed residence on the property, that the work was performed within 180 days prior to the filing of the complaint, that the contract price was $9,600, that $5,760 remained due and owing, and that Winkler had given the owners written notice of its intention to claim a lien. Winkler alleged that it had completed the "1st deck and all interior and exterior 1st floor walls," the "2nd deck and all interior and exterior 2nd floor walls," the "roof deck and all interior and exterior walls," "windows and exterior doors and exterior trim package," and "framing punch out after trades, ready for drywall." Documents evidencing some of those averments were attached as exhibits to the petition—the trade agreement with Musser, the legal description of the property, the notice sent to the owners, and a return receipt evidencing receipt by them of that notice. Those allegations were also supported by an affidavit of William Winkler, the plaintiff Winkler's president.

Although the construction was alleged to be of a "residence," there was no allegation that the residence was to be for the owners' use, that it was a single family residence, or whether the owners had paid the prime contractor in full by the time the notice was sent. Winkler asked that the court order the owners to show cause why a lien in the amount of $5,760 should not be established, and, once a lien was established, enforce it. Count II incorporated the allegations of Count I and asserted a breach of contract claim against

Musser for $5,760. No jury trial was sought with respect to Count II.

On July 8, 1997, in conformance with Rule 12–304(b), the court issued an order directing the owners, by filing a counter-affidavit or verified answer on or before August 7, to show cause why a mechanic's lien in the amount of $5,760 should not attach to their property. The order set a hearing for August 14 and warned the owners that, if they failed to file a timely counter-affidavit or verified answer, the facts averred in the complaint will be deemed admitted, their right to a hearing would be waived, and the court may pass an order establishing the lien forthwith. The order, along with a copy of the complaint and a summons to appear personally before the court on August 14, was served on Dr. Jerome on July 9, 1997.

Musser answered the complaint and denied that Winkler had performed the agreed-upon services and that any money was due to Winkler. The answer contained no factual basis for those denials—just the bald statements denying the allegations. Musser also filed a counterclaim alleging a breach of the subcontract and an abandonment of the job site by Winkler and seeking $20,000 in damages. In the counterclaim, Musser accused Winkler of filing the complaint for a mechanic's lien in bad faith and without substantial justification. Attached as exhibits were (1) a letter from Musser dated March 13, 1997, accusing Winkler of having abandoned the job and terminating the subcontract by reason of noncompliance, (2) a letter dated April 21, 1997, claiming gross damages from Winkler's breach in the amount of $13,000, less the balance due on Winkler's contract of $5,760, for a net claim of $7,240, and (3) several corroborating invoices. Musser did not ask for a jury trial on the counterclaim.

The owners never filed a response of any kind to the complaint and show cause order. Nor did they appear, personally or through counsel, at the hearing held on August 14. Musser appeared through counsel, arguing only that the dispute was really between Musser and Winkler and did not involve the owners. No one raised the question of whether

the owners had paid the prime contractor in full by the time they received the plaintiff's notice of intent or, if not, what amount remained unpaid on the prime contract. No one either asserted or denied that the building was a single family residence intended for the owners' use. Musser's entire argument was that, because of the dispute over whether Winkler breached the subcontract, it was inappropriate to establish a lien. The court noted the statutory effect of the owners' failure to file a response, however, and concluded that, with what it regarded as the essential facts admitted by that failure, there was no genuine dispute of material fact with respect to Count I. It thereupon granted Winkler's request for establishment of a mechanic's lien. The actions between Winkler and Musser were reserved for later trial.

The order, filed on August 20, recited that, from the documents on file and the lack of any response from the owners, it appeared that there was no genuine dispute of material fact and that Winkler was entitled to a mechanic's lien as a matter of law. The order established a lien in the amount of $5,760, directed that the property be sold unless that amount was paid by September 15, 1997, appointed plaintiff's attorney as trustee to conduct the sale, directed that he file a bond in the amount of $7,500 and advertise the sale in a particular manner, and ordered the trustee, upon ratification of the sale, to convey the property to the purchaser.

On August 22, the owners and Musser, all represented by Musser's attorney, filed a motion to vacate and reconsider that final order. In that motion, they asserted that Musser, which also was a subcontractor, was defending the action on the owners' behalf. They averred that, when the owners were served with the show cause order, they contacted their prime contractor, Valley Homes, which assured them "that the matter would be taken care of, as a mechanic's lien release bond was obtained so that no further action was required on their part." Musser's attorney advised the court that the owners had personal knowledge of defects in the carpentry work, which *Musser* attributed to Winkler. It does not appear that the owners themselves made any assertion as to who was

responsible for the defects or that they even knew who was responsible. Asserting that there was a genuine dispute of material fact, the movants asked that the court allow the owners to file a verified answer, accept a bond in the amount of $5,760, and vacate the lien. Nowhere in the motion did the owners raise § 9–104(a)(2) or (f)(3) as a defense or make any assertion as to whether the conditions of those subsections applied. Nor did they attach a proposed verified answer to the motion. The court denied the motion on October 1, 1997. Meanwhile, on August 25, Winkler filed an answer to Musser's counterclaim, denying liability.

On October 14, the owners and Musser filed a motion "to alter and revise denial of defendants' petition to file a mechanic's lien release bond." The thrust of that motion was a request that the court accept an attached bond in the amount of $5,760, release the land from the lien, vacate the order denying the earlier motion to vacate, and try the case on the merits. No reference to the conditions provided for in § 9–104(a)(2) or (f)(3) was made in the motion. On October 20, the defendants moved to stay enforcement of the judgment, advising the court that they had filed an appeal to the Court of Special Appeals and noting, for the first time, that Winkler had failed to plead and prove that the owners were indebted to the general contractor. The notice of appeal was actually docketed on October 22. On November 6, the court denied the motion to alter; it does not appear that the motion for stay was ever considered by the court.

The Court of Special Appeals, relying on its earlier decision in *F. Scott Jay & Co., Inc. v. Vargo,* 112 Md.App. 354, 685 A.2d 799 (1996), reversed the judgment, holding that the provisions of § 9–104(f)(3) did not constitute an affirmative defense to be raised by the owner but rather was a matter that had to be raised and negatived by the plaintiff. It held that Winkler's petition was "not in compliance with the statute" because it did not contain any information with respect to whether the building was a single family dwelling and failed "to allege the amount of indebtedness of the property owners to the general contractor at the time notice of intent to seek

the lien was given...." *Jerome v. Winkler, supra,* 123 Md. App. at 552–53, 720 A.2d at 4. The thrust of the appellate decision was that facts showing the inapplicability of § 9–104(f)(3) had to be pled and proved by the plaintiff and could not be taken as established or admitted by reason of the failure of the owner to answer the complaint.[5]

The intermediate appellate court also admonished Winkler and, at least inferentially, its attorney, for not presenting to the court, with the complaint, the documents supplied by Musser indicating a dispute over Winkler's entitlement to the lien. At 556, 720 A.2d at 6, the court noted that a pleading in a mechanic's lien case is subject to the same scrutiny as any other verified pleading and concluded that, if the pleader "has information that is contrary to its sworn statements in the verified pleading," it may not "ignore that contrary evidence and couch its pleading in a manner that, because of the withheld information, might mislead the court." It also referenced Rule 3.3 of the Maryland Rules of Professional Conduct, dealing with "Candor Toward the Tribunal," although it did not specify how (or whether) that rule had been transgressed.

We granted *certiorari* to address whether the allegations in Winkler's petition were sufficient to permit the trial court to issue a final lien upon the owner's failure to file an answer and to appear at the show cause hearing.

## DISCUSSION

### Jurisdiction

■ Before delving into the substantive issues, we need to comment on a jurisdictional matter. As noted, Winkler, in its complaint, not only sought a mechanic's lien against the owners' property but also sued Musser for breach of contract. Musser filed a counterclaim against Winkler. Those claims, between Winkler and Musser, have never been resolved and

---

5. The Court of Special Appeals dealt only with § 9–104(f)(3) and never mentioned § 9–104(a)(2), which, with respect to the issue raised here, is the more important provision.

remain pending in the circuit court. Accordingly, no final judgment under Maryland Rule 2–602 has yet been entered. The order establishing the lien is therefore an interlocutory one, and, if the order had done nothing more than establish the lien, it would not have been immediately appealable. The order in question did much more, however. It not only established a lien but, as noted, ordered that the property be sold if the amount of the lien was not paid by a specific date and appointed a trustee to sell the property in that event. By reason of those additional provisions, which, on their face, were self-executing without the need for further involvement by the court, the order is appealable under § 12–303(3)(v) of the Courts and Judicial Proceedings Article, permitting an immediate appeal from an interlocutory order for the sale, conveyance, or delivery of real or personal property.

### The Matters Before Us

On the facts of this case, the issue raised by Winkler embodies two sub-issues that need to be identified and addressed. One, certainly, is which party had the burden of pleading and proving whether, at the time Winkler sent notice of its intent to seek a lien, the owners had paid the prime contractor in full and, if not, the amount remaining unpaid. A second issue, which is governed by the answer to the first, is the effect of the owners' failure to respond to the show cause order and to offer any information or evidence with respect to those matters.

A third issue, quite apart from the first two, arises from the gratuitous comment by the Court of Special Appeals suggesting that counsel for Winkler had a duty under Rule 3.3 of the Maryland Rules of Professional Conduct and Winkler itself had some pleading duty to disclose to the court documents in their possession—presumably the documents attached by Musser to its counterclaim—indicating a dispute over Winkler's entitlement to a lien.

### Duty of Disclosure

The third issue stands alone, and we shall dispose of it first. We agree with the general statement that a party

may not couch a pleading in a manner that is likely to mislead the court, and there is no doubt that attorneys have clear duties and constraints under Rule 3.3. Neither precept, however, requires a party or an attorney to assert an adverse party's defense, much less to produce evidence in support of it, when the party disputes that defense. The closest that Rule 3.3 comes in that regard is the requirement, in § (d), that, "[i]n an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse." The proceedings in this case were not *ex parte*. Section 9–105(a)(1)(iii) and Rule 12–302(b)(3) require that the plaintiff, in the complaint, state the amount or sum claimed to be due "less any credit *recognized by the [plaintiff]*." (Emphasis added.) They do not require the plaintiff to allege a credit or defense that it does not recognize as valid; that is for the owner or other interested party to assert.[6]

### *Who Bears The Burden And How May It Be Met?*

 The mechanic's lien law has historically been construed "in the most liberal and comprehensive manner in favor of mechanics and materialmen." *T. Dan Kolker, Inc. v. Shure,* 209 Md. 290, 296, 121 A.2d 223, 226 (1956) and cases cited therein. Indeed, the law itself provides that it is remedial and is to be construed to give effect to its purpose. § 9–112. The need for a liberal construction is particularly important with respect to subcontractors who, though benefitting the owner and enhancing the value of the owner's property by the provision of their labor or materials, have no direct contractual relationship with the owner and therefore cannot otherwise subject the owner's property or assets to the payment of their claims. That bent of the statute in favor of

---

6. Winkler asserted that it had completed the work under the contract and claimed a balance due of $5,760. In its counterclaim, Musser agreed that $5,760 was unpaid but asserted that Winkler had failed to complete the work and had abandoned the job site. In its later motion to vacate the lien, however, Musser suggested that the problem was with defects in the work, rather than with a failure of completion.

subcontractors has always been subject to the caveat, however, that, as a mechanic's lien was unknown at common law and is purely a creature of statute, it is "obtainable only if the requirements of the statute are complied with." *Freeform Pools v. Strawbridge,* 228 Md. 297, 301, 179 A.2d 683, 685 (1962); *Aviles v. Eshelman Elec. Corp.,* 281 Md. 529, 536, 379 A.2d 1227, 1231 (1977).

Prior to 1976, a mechanic's lien attached automatically as soon as the work was done or the materials were provided. That lien, created by operation of law, lasted for six months and could be extended simply by the contractor or subcontractor filing a claim with the clerk of the circuit court. *See Barry Properties v. Fick Bros.,* 277 Md. 15, 19, 353 A.2d 222, 226 (1976). Upon that *ex parte* filing, the lien continued for an additional year, subject to the claimant's suing to enforce it or the owner or other interested person suing to compel the claimant to prove the validity of the claim. Theoretically, the lien could exist for as long as 18 months before the claimant was required to prove the underlying basis for it. The only condition, in the case of a subcontractor who did not deal directly with the owner, was that the subcontractor give written notice to the owner within 90 days after furnishing the work or material. The function of that notice was to allow the owner to protect itself by withholding the amount of the claim from what otherwise would be due to the prime contractor, subject to later resolution or adjudication. *Barry Properties, supra,* at 20, 353 A.2d at 226. As we indicated in *Bounds v. Nuttle,* 181 Md. 400, 406, 30 A.2d 263, 266 (1943):

"The theory of it is that the owner gets the benefit of the materials, and he has control of the money. If he negligently and carelessly pays the money out to the contractor without taking precautions to see that it is applied to the payment of the materials which go into the building, then he must stand the loss rather than the material man, who has no opportunity to protect himself once he has delivered the materials."

*See* also *Palmer Park Ltd. v. Marvelite, Inc.,* 255 Md. 121, 126, 257 A.2d 169, 171–72 (1968).

■ As a result of our decision in *Barry Properties*, finding Constitutional fault with the then-existing statutory approach, the law was promptly and comprehensively rewritten to provide a greater measure of due process to the owner. As we have indicated above, under the current law a lien is not created until it is established by a court, and it may not be established by a court, even on an interlocutory basis, absent a finding of probable cause made after the owner has an opportunity to object.

A more focused change, which underlies this appeal, came in 1982, with the enactment of 1982 Md. Laws, ch. 251. The fundamental purpose of that statute, articulated in its title, was to "limit[ ] the liability of an owner to a subcontractor for work performed and materials rendered by the subcontractor on a single family dwelling erected on the owner's land for his own residence, to the extent that the owner has rendered payment to the contractor." The expressed intent of the Legislature was clearly remedial, but remedial, in this instance, in favor of the owner, rather than the claimant. The ability under the existing law of an owner, upon receipt of a subcontractor's notice, to withhold the amount of the claim from the prime contractor was obviously not regarded as sufficient protection in the case of a single family residence being built for the owner's own residential use. By the time the notice is received, the owner may already have paid the prime contractor or have accumulated set-offs or credits exceeding what is owed on the contract. The Legislature chose to achieve its intended result in three ways, all of which fit together: (1) by amending § 9–104(a) to add as a condition to a subcontractor's entitlement to a lien for work or materials supplied in such a circumstance that the owner not have made full payment to the contractor prior to receiving the notice; (2) by adding § 9–104(f)(3), to provide that a lien may not exceed the amount of the owner's indebtedness to the prime contractor at the time the subcontractor's notice is given; and (3) by adding a new § 9–114, requiring that the prime contractor, at the time of settlement with or payment in full by the owner, give the owner a signed release from each material

supplier and subcontractor who provided materials under the contract.

It is often the case with well-intended beneficent legislation that a devil lurks in the unconsidered details, and the 1982 Act is no exception. The statute has produced a number of questions, not the least of which are those now before us. In 1986, the Court of Special Appeals dealt with the meaning of the phrase in § 9–104(f)(3), "indebted under the contract"— specifically, whether an owner remains indebted under the contract if there are still unpaid funds but, due to an alleged default by the prime contractor, the owner claims offsetting damages. In *Ridge Sheet Metal Co. v. Morrell*, 69 Md.App. 364, 517 A.2d 1133 (1986), the court held that, if the prime contractor, because of its default, could not enforce an obligation to pay the retainage, the owner was not indebted. The correctness of that ruling is not now before us. We do note, however, that the evidence underlying the ruling came largely from the owner.

In *Reisterstown Lumber v. Tsao*, 319 Md. 623, 574 A.2d 307 (1990), we were required to determine the point at which the owners' intent with respect to occupying a dwelling as their residence was to be determined. The claimant supplied materials for what undisputedly was a single family residence. The question was whether the owners intended the structure to be *their* residence. The evidence showed that, when the contract was entered into, they *did* intend to live in the house when it was completed, that, at some point during the construction, they changed their minds and listed the property for sale, but, that after receiving the claimant's notice of intent to claim a lien, they changed their minds again and eventually occupied the house themselves. We did not deal there with a dearth of allegations or evidence but rather with what to make of the evidence that was presented: at what point, given the owners' fluctuating intents, was their intent to be fixed for purposes of determining whether § 9–104(a)(2) and (f)(3) applied—when the contract was signed, when the claimant's notice of intent to file a lien was sent, or based on a weighted average of what

their intent was at various times during the 21–month construction period?

In addressing that issue, we noted the ever-present prospect of owners changing their minds during the construction period, for a wide variety of reasons, and the difficult problem that can cause in applying the statute. We stated, at 631, 574 A.2d at 311:

> "In selecting the standard, 'for [the owner's] own residence,' the General Assembly surely did not intend to put on the lien claimant the burden of demonstrating a predominant intent over the entire course of construction in order to avoid the residential exception. Indeed, it is difficult enough to establish intent at the moment of the res gestae in the prosecution of some crimes. A construction of § 9-104(a)(2) which is heavily dependent on subjective intent or tracing, over a long period of time, the conduct of persons with whom the claimant has no privity would not allow liens to be established, or the residential exception to be applied, with relative simplicity."

To avoid that uncertainty, we held that the owner's intent is to be determined when the subcontractor "commences an otherwise substantially uninterrupted performance of work for, or selling of materials to, the contractor." Although the case did not directly involve the issue of burden of proof, it did point out the need for rules of interpretation that will allow the statute to operate efficiently and not place on claimants a burden so onerous as effectively to frustrate their ability to obtain liens.

In *F. Scott Jay & Co. v. Vargo, supra,* 112 Md.App. 354, 685 A.2d 799, it was undisputed that the claimant, a subcontractor, supplied materials to the prime contractor for use in constructing a single family dwelling intended for the owner's own residence and that $4,343 remained due and owing. Indeed, the subcontractor obtained summary judgment for that amount in its breach of contract action against the prime contractor. The dispute with regard to the mechanic's lien claim was whether the owners were indebted to the prime

contractor when the subcontractor's notice was sent. The evidence showed that the prime contractor left the job prior to completion and, a week or so later, went into bankruptcy. At the time of abandonment, the prime contractor had been paid $155,161 on a $230,000 contract. Some work, justifying a further payment, had been done. The owners employed another contractor to finish the work and used most of the remaining funds on the contract to pay the new contractor. On this evidence, the trial court found that the owners had a legitimate set-off against the claim of the prime contractor and therefore were not indebted to that contractor, and the Court of Special Appeals affirmed.

With no discussion, the court concluded that, "[u]nder the express terms of [§ 9–104(f)(3) ] lack of indebtedness is not an affirmative defense to be proved by the homeowner. Rather, the unambiguous language of § 9–104(f)(3) clearly assigns to the subcontractor the burden of proving indebtedness." *F. Scott Jay & Co., supra,* 112 Md.App. at 360–61, 685 A.2d at 802. That interpretation, it said, was supported by the general rule placing the burden on the subcontractor to prove its entitlement to a lien. If the Legislature intended to make lack of indebtedness an affirmative defense, the court added, it would have done so by clear and explicit language. The Court of Special Appeals also rejected the argument that, as the owners failed to file an affidavit in opposition to the complaint, a final lien should have been established. The parties had consented to the establishment of an interlocutory lien pending trial on the merits. The appellate court determined that the failure to file an affidavit constituted only an admission of facts contained in the complaint, not an admission that the complaint was legally sufficient. As we observed, those conclusions from *F. Scott Jay & Co.* formed the basis of the intermediate appellate court's decision in this case.

We indicated above that we disagree *in part* with the conclusions of the Court of Special Appeals. We adhere to the view that, in general, the burden is on the claimant to establish its entitlement to a lien and that the owner bears no

ultimate burden to negate that entitlement. We also believe, however, as we held in *Reisterstown Lumber v. Tsao, supra,* 319 Md. 623, 574 A.2d 307, that the mechanic's lien law should not be construed in such a way as to make the burden on the claimant so difficult as effectively to withdraw the remedy that the Legislature has clearly provided, and that is what the full force of the Court of Special Appeals ruling in this case would do.

■ The intermediate appellate court held that Winkler's *petition* was "not in compliance with the statute" because it "fails to allege the amount of the indebtedness of the property owners to the general contractor at the time the notice of intent to seek the lien was given...." *Jerome v. Winkler, supra,* 123 Md.App. at 552–53, 720 A.2d at 4. There are two problems with that ruling. First, § 9–105 and Rule 12–302 specify the information that must be contained in the claimant's complaint, and there is nothing in either the statute or the Rule that requires the complaint to include a statement regarding the owner's indebtedness to the prime contractor. Indeed, the Court of Special Appeals recognized that Winkler's verified complaint "was in strict accordance with Md. Rule 12–302(a) and (b)." *Id.* at 556, 720 A.2d at 6. To require that additional information in the complaint would, in essence, amount to amending the statute and the rule, which is not something that ought lightly to be done by judicial fiat.

The more significant problem lies in the fact that such a requirement would be virtually impossible, in most instances, to satisfy. A subcontractor, which has no privity with the owner, will likely have no knowledge when it files a complaint, and no practical basis for acquiring knowledge at that time, of whether the owner had paid the prime contractor in full prior to the sending of the subcontractor's notice and, if not, the amount that remained unpaid at that time and whether the owner had any legitimate set-off to that amount.

The practical effect of the appellate court's ruling is to make virtually every complaint filed by a subcontractor legally insufficient. It is not a matter, as the court assumed, of the trial court entering an interlocutory lien subject to later proof

of the owner's indebtedness to the prime contractor. Under § 9–106(a)(1) and Rule 12–304(b), the court would be required, upon a mere review of the complaint, to determine that a lien should not attach and thus dismiss the complaint without even requiring the owner to answer. If the claimant somehow survives that hurdle, § 9–106(b)(2) and Rule 12–304(e)(1)(B) require that, if the pleadings, admissions, and evidence show that there is no genuine dispute as to any material fact and that the plaintiff, as a matter of law, has failed to establish a right to a lien, which is what the appellate court held, the trial court must enter a *judgment* denying the lien. In either event, if the plaintiff does not have sufficient information to state *under oath* whether and to what extent the owner was indebted to the prime contractor when the notice was sent, the case will end at that point, and the plaintiff will have no ability to develop that information.

We do not believe that the Legislature intended that result, and we are unwilling to establish a rule that would encourage claimants, in order to avoid that result, to make allegations under oath for which they have no reasonable basis. That would, at the very least, be contrary to Maryland Rule 1–341. We conclude, therefore, that the law does not require the claimant to aver in the complaint whether, at the time the subcontractor's notice was sent, the owner had paid the prime contractor in full.

The same practical problem is presented with respect to the production of evidence on that matter. The subcontractor is not likely to have evidence of what, if anything, remained unpaid on the prime contract. Only the owner, the prime contractor, and possibly the owner's construction lender will have that information, and none of them are likely to prove cooperative in sharing it with the subcontractor. A full range of discovery may be possible against the owner, but, unless the prime contractor is a party to the action, it will be far more limited with respect to that person and any construction lender.[7]

---

7. Judge Cathell, in dissent, may be correct that, in some cases, a demand for the admission of facts could suffice—if the owner either

■ We believe that the statute, when read in a sensible manner, provides a fair and reasonable balance to the competing interests. The claimant is required to plead the information required by § 9–105 and Rule 12–302. It is significant that, in enacting § 9–104(a)(2) and (f)(3), the Legislature did not amend § 9–105 to require a subcontractor to plead any facts concerning the new provisions. We have followed the general rule in civil actions that, when a particular party has peculiar knowledge of a fact, the burden of alleging and offering evidence of that fact is on that party. *See Department of Health v. Phoebus,* 319 Md. 710, 718, 575 A.2d 335 (1990), citing *Lake v. Callis,* 202 Md. 581, 587, 97 A.2d 316, 319 (1953). Applying that principle in *District Hgts. Apts. v. Noland Co., supra,* 202 Md. 43, 95 A.2d 90, we held that "while the burden is on the materialman in a mechanic's lien case to establish the fact that he delivered the materials for which he claims the lien, it will be presumed that all materials which he shipped to the defendant were duly delivered, in the absence of some direct evidence to the contrary," thereby placing the burden on the owner to produce some evidence to the contrary. *Id.* at 50–51, 95 A.2d at 93–94. *See* also *Grier v. Rosenberg,* 213 Md. 248, 131 A.2d 737 (1957) and Maryland Rule 5–301, dealing more generally with the function of presumptions.

■ We believe that approach is a reasonable one to adopt in this situation. As noted, we adhere to our general rule that the overall burden of proving an entitlement to a lien remains with the claimant. If a subcontractor who has supplied labor or material to a single family dwelling properly alleges that which the statute and the Rule require, however, it may be presumed that, at the time the contractor's notice was sent, the owner was indebted to the prime contractor in an amount at least equivalent to the subcontractor's claim. Such a presumption is not pulled from the ether, but is justified by (1)

---

admits the fact proposed or fails to respond at all to the request. If there is any dispute between the owner and the prime contractor, however, the owner is not likely to admit an indebtedness.

the appropriate inference arising from § 9–114, enacted together with § 9–104(a)(2) and (f)(3), that the owner will not have settled in full with the prime contractor without an assurance that all subcontractors have been paid, (2) the fact that, as between the owner and the subcontractor, any contrary information is peculiarly within the knowledge of the owner, and (3) the fact that the owner has an ample opportunity to raise the issue and present the relevant evidence.

If the owner fails to raise the issue and present evidence on it, the court may credit the presumption, as in *District Hgts. Apts.*, in determining whether the plaintiff has met the burden of establishing its entitlement to a lien. If the owner does raise the issue and presents evidence sufficient, *prima facie*, to establish that, at the time the subcontractor's notice was sent, the owner either had paid the prime contractor in full or was indebted for an amount less than the subcontractor's claim, a question of fact will be created as to which the plaintiff will have the ultimate burden of persuasion. This approach gives full force and effect to § 9–104(a)(2) and (f)(3) without unduly crippling a subcontractor's ability to obtain a lien.

Applying this principle to the case at hand, it is clear that the circuit court did not err in establishing the lien. The owners had ample opportunity to raise the issue of their indebtedness to the prime contractor and consistently failed to do so. They ignored the court's show cause order by neither filing an answer nor appearing at the hearing. Even after the lien was established, they failed, in their motion to alter the judgment, to raise the issue. It was not until they moved to stay enforcement of the lien, in October, that they complained of Winkler's failure to prove an indebtedness on their part to Valley Homes, but even then they made no assertion that they were not so indebted. To this day, they have never even alleged, much less offered evidence on, the status of the prime contract when Winkler's notice was sent. There thus being no countervailing evidence before the court, it could properly presume that the owners were still indebted to Valley Homes

in the amount of at least $5,760 when they received Winkler's notice. That, coupled with the admissions arising from the owners' failure to respond to the show cause order, sufficed to warrant the establishment of a lien.[8]

JUDGMENT OF COURT OF SPECIAL APPEALS RE-VERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM JUDGMENT OF CIRCUIT COURT FOR CARROLL COUNTY; COSTS IN THIS COURT AND IN COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENTS.

ELDRIDGE and CATHELL, JJ., dissent.

CATHELL, Judge, dissenting:

I respectfully dissent. At page 254, the majority states: "As noted, we adhere to our general rule that the overall burden of proving an entitlement to a lien remains with the claimant." As I read the majority's opinion, it does not adhere to the general rule.

The majority correctly notes at page 248 that the fundamental purpose of 1982 Md. Laws, Chap. 251, was to "limit[ ] the liability of an owner to a subcontractor for work performed and materials rendered by the subcontractor on a single family dwelling erected on the owner's land for his own residence, to the extent that the owner has rendered payment to the contractor." The Court, however, has taken upon itself to minimize the legislative purpose because of the difficulties it perceives subcontractors may have in establishing a lien against an owner's property. The Legislature wanted it to be

---

8. The mere fact that Musser disputed Winkler's claim against it did not preclude the court from following the statute and taking the owners' failure to respond as an admission on their part of the facts pled in Winkler's complaint. At the time of the show cause hearing, the court was not required to assume that the interests of the owners and Musser were consistent. The Legislature and this Court have given owners a fair and easy opportunity to prevent the establishment of a lien at that preliminary stage by simply filing an answer. They are clearly warned of the consequences of failing to file such an answer, and, if they choose to ignore that warning, they must bear the risk of the consequences.

difficult to establish a lien and it said as much by passing this law.

The majority states at page 254 that if the statute is read sensibly (in other words, read as the majority thinks the statute should have been drafted), then it provides a fair and reasonable balance to the competing interests. In essence, the Court substitutes what it perceives to be a fair and reasonable balance for the preferential treatment of homeowners that the Legislature intended. The effect of the majority opinion is to set a course back to the status between subcontractors seeking liens and landowners that existed prior to the 1982 statute and this Court's decision in *Barry Properties v. Fick Bros. Roofing Co.*, 277 Md. 15, 37, 353 A.2d 222, 235 (1976) (holding that the portion of the mechanic's lien statute that created a lien the moment the work was performed or the materials were furnished was unconstitutional because it violated owners' due process rights under Article 23 of the Maryland Declaration of Rights and the Fourteenth Amendment of the United States Constitution).

To be fair, the majority discusses at some length the difficulty a potential lien holder will encounter in attempting to ascertain the nature of the ownership, intent to reside, and amount owed by the owner to a general contractor. It bases its bottom line, at least in part, on a perceived difficulty of proof. But at the inception of arrangements between homeowners and general contractors, there is no way, other than constant presence on-site, for an owner to be able to identify the subcontractors or materialmen. Even then, such a determination could be difficult. Furthermore, when a general contractor presents a signed release of liens, there is no way for the owner to know if the release is accurate, complete, or even authentically signed. Matters of proof could be equally difficult.

When, however, a complaint (petition) is filed by a subcontractor and service of process obtained, he has the ability to avail himself fully of all the discovery procedures available to any other litigant, including depositions, interrogatories, mo-

tions to compel, and requests for admission of facts. A request for admission of facts for the facts the majority emphasizes in this case, if unanswered, would have constituted evidence of those facts. Maryland Rule 2–424(b) specifically states:

> Each matter of which an admission is requested shall be deemed admitted unless, within 30 days after service of the request or within 15 days after the date on which that party's initial pleading or motion is required, whichever is later, the party to whom the request is directed serves a response signed by the party or the party's attorney.

Each of the matters such as ownership, residence, and indebtedness with the general contractor is particularly suited for such a request. The framing of a request for such admissions would not prove difficult.

Interrogatories likewise could be used to develop information. Depositions of the owner, general contractor, and even representatives of construction loan lenders could be taken. These people may not like to be deposed; most people do not. Regardless, they will be deposed anyway if litigants perceive that their testimony would be helpful.

*Barry Properties* began the process of protecting property owners from the abuses to which they had been subjected prior to that decision; the 1982 statute continued the trend of affording protection to some homeowners. The majority opinion, in my view, reverts to the time when subcontractors, who could not or chose not to protect themselves against the abuses general contractors sometimes inflicted upon them, held homeowners hostage financially. I decline to promote such a course of action and respectfully dissent.

Judge ELDRIDGE has authorized me to state that he joins in the views expressed herein.