574 A.2d 307

**The REISTERSTOWN LUMBER COMPANY**

v.

**Iky TSAO et ux.**

**No. 99 Sept. Term, 1989.**

Court of Appeals of Maryland.

June 1, 1990.

Thomas C. Beach, III (Mara E. Schechter, Whiteford, Taylor & Preston, all on brief) Baltimore, for appellant.

Michael G. Rinn (Ruppersberger, Clark & Mister, both on brief) Timonium, for appellees.

Argued before ELRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS, CHASANOW and CHARLES E. ORTH, Jr., Judge of the Court of Appeals of Maryland (retired), Specially Assigned, JJ.

RODOWSKY, Judge.

In this case the Court must decide whether the "residential exception" to the mechanics' lien law contained in

Maryland Code (1974, 1988 Repl.Vol.), § 9–104 of the Real Property Article (RP), applies when homeowners contract to have a single family dwelling built on their land with the intent to make it their residence, but, during the course of construction, decide to place the house on the market for sale.[1]

Appellant, The Reisterstown Lumber Company (RLC), supplied materials for a house being constructed for the appellees, Iky and Josephine P-Y Tsao.[2] RLC sought a mechanics' lien for balances owed to RLC by the contractor, L.W. Marino, Inc. (Marino). The Tsaos invoked § 9–104(a)(2). Section 9–104(a) provides:

"(a) *Notice required to entitle subcontractor to lien.* —(1) A subcontractor doing work or furnishing materials or both for or about a building other than a single family dwelling being erected on the owner's land for his own residence is not entitled to a lien under this subtitle unless, within 90 days after doing the work or furnishing the materials, the subcontractor gives written notice of an intention to claim a lien substantially in the form specified in subsection (b) of this section.

"(2) A subcontractor doing work or furnishing materials or both for or about a single family dwelling being erected on the owner's land for his own residence is not entitled to a lien under this subtitle unless, within 90 days after doing work or furnishing materials for or about that single family dwelling, the subcontractor gives written notice of an intention to claim a lien in accordance with subsection (a)(1) of this section and the owner has not made full payment to the contractor prior to receiving the notice."

In the circuit court RLC argued that the residential exception did not apply because the house was not "being

---

**1.** Unless otherwise noted all statutory references are to Md.Code (1974, 1988 Repl.Vol.), Real Property Article.

**2.** Under the mechanics' lien law RLC is a "subcontractor." RP § 9–101(c) and (g).

erected" on the land of the owner "for his own residence." The trial court's analysis was that the phrase "being erected ... for his own residence" could relate to an owner's intention in three possible ways: (1) intent when the construction contract was signed, (2) the dominant intent over the total period of construction, and (3) intent when the subcontractor furnished materials for which the lien is sought.

The trial court concluded that the underlying purpose of the exception was furthered by focusing on "the total transaction" rather than "any isolated portion thereof." Viewing the intent of the appellees from the total transaction perspective the court found that the "primary and driving motivation" was to construct a building as the Tsaos' residence.

RLC appealed and this Court issued the writ of certiorari on its own motion prior to consideration by the Court of Special Appeals.

The facts of the case are that on October 9, 1986, the Tsaos contracted with Marino for the construction of a single family dwelling on their land. At that time they intended to reside in the house upon its completion. Marino began construction in January 1987 and, after experiencing financial difficulty and failing fully to complete the house, ceased work in January of 1988.

The Tsaos had obtained a construction loan. The lender made periodic advances at scheduled points of progress toward completion of the work. The lender's checks for each draw were issued to the Tsaos who endorsed the checks to Marino.

RLC began supplying Marino with materials for use in the construction of the house in January 1987, and RLC made its last delivery in December 1987. RLC's bills to Marino were to be paid within thirty days. Marino timely paid each of RLC's bills rendered for deliveries through June 1987, a total of $44,995.75. Marino, however, failed to pay at all for materials that RLC delivered beginning in

July and thereafter. The unpaid purchase prices (excluding late charges) of materials delivered to Marino, by month, are:

| | | |
|---|---|---|
| July 1987 | – | $ 9,392.18 |
| August 1987 | – | 1,900.36 |
| September 1987 | – | 2,010.69 |
| October 1987 | – | 1,039.17 |
| December 1987 | – | 545.51 |
| Total | | $14,887.91 |

The house was framed and under roof by March 2, 1987. At approximately that time the Tsaos first noticed that a cemetery was visible from their second floor bedroom window. Their cultural and religious beliefs proscribe residing in direct view of a cemetery. They decided, "in the summer of 1987," per the trial judge's finding of fact, to sell the house when construction was complete. In October of 1987 the Tsaos listed the house with a real estate broker.

In late November 1987 the final draw was paid to Marino.[3] On March 2, 1988, RLC served its notice of an intention to claim a mechanics' lien. RLC filed suit to enforce the mechanics' lien on May 20, 1988.

The trial judge found that no contract of sale was ever presented for the house which remained vacant until the Tsaos occupied it. In late June or early July 1988, they took the house off the market. They moved into the house in August 1988 and have resided there to date.

The current mechanics' lien statute was enacted by Ch. 349 of the Acts of 1976 as an emergency measure following the decision in *Barry Properties, Inc. v. The Fick Bros. Roofing Co.*, 277 Md. 15, 353 A.2d 222 (1976), which had invalidated prehearing seizure features of the prior law, Md.Code (1974, 1975 Cum.Supp.), RP §§ 9–101 through 9–113. This Court has said, speaking of the prior law, that it should be liberally construed in favor of lien claimants. *See*

---

**3.** All parties consider that "full payment to the contractor" within the meaning of § 9–104(a)(2) has been made by the Tsaos. Marino did not furnish a release of lien from RLC. *Cf.* § 9–114.

*Clark Certified Concrete Co. v. Lindberg,* 216 Md. 576, 582, 141 A.2d 685, 688 (1958); *Johnson v. Metcalfe,* 209 Md. 537, 543, 121 A.2d 825, 828 (1956); *T. Dan Kolker, Inc. v. Shure,* 209 Md. 290, 296, 121 A.2d 223, 226 (1956). But we are here concerned particularly with the residential exception which was added to the current statute by Ch. 251 of the Acts of 1982. That exception's clear purpose is to protect from double payment the owner of a "single family dwelling being erected on the owner's land for his own residence."

RLC's initial argument rests on § 9–104(f)(3) which was added to the current law as part of Ch. 251 of the Acts of 1982. As so amended § 9–104(f) reads:

*"Payments by owner to contractor after notice; limitation on lien against certain single family dwellings.—* (1) On receipt of notice given under this section, the owner may withhold, from sums due to the contractor, the amount the owner ascertains to be due the subcontractor giving the notice.

"(2) If the subcontractor giving notice establishes a lien in accordance with this subtitle, the contractor shall receive only the difference between the amount due him and that due the subcontractor giving the notice.

"(3) Notwithstanding any other provision of this section to the contrary, the lien of the subcontractor against a single family dwelling being erected on the land of the owner for his own residence shall not exceed the amount by which the owner is indebted under the contract at the time the notice is given."

RLC points to the specification in subsection (f)(3) of "the time the notice is given" and says that it specifies the critical time for determining an owner's intent that a dwelling be "for [the owner's] own residence."

Under subsection (f)(3) the time when the subcontractor gives notice to the owner is the time as of which the owner's indebtedness to the contractor is determined. That

balance, per (f)(3), establishes the limit of the potential lien which can be imposed upon the property of the owner of a "residence." The subcontractor's lien cannot exceed the amount due by the owner to the contractor. In that way the owner can be protected from double payment. On receipt of the notice of intent to claim a lien the owner is entitled to withhold from future draw payments to the contractor "the amount the owner ascertains to be due the subcontractor giving the notice." § 9–104(f)(1). If the subcontractor establishes a lien, the owner may take credit for the lien in resolving the account with the contractor. § 9–104(f)(2). In the instant case it is undisputed that the Tsaos had fully paid Marino when RLC gave notice of intent to claim the lien.

The issue here is not how much the lien on the residence may be. Thus, the time of the notice as specified in § 9–104(f) is not controlling.

Rather, the issue is whether the special rule of § 9–104(a)(2) applies at all. The special rule applies only where the construction is "a single family dwelling being erected on the owner's land for his own residence." If the special rule does not apply, then RLC need only have given the ninety days notice required under the general rule of § 9–104(a), and RLC would not be impeded in attempting to establish the lien by the fact that a lien could produce double payment on the part of the Tsaos.

RLC alternatively argues the totality of the circumstances approach taken by the trial judge, but RLC submits that that approach produces a different result from the judgment below. RLC says that the relevant period is twenty-two months, from October 1986 through August 1988, that is, from the formation of the construction contract with Marino to the time when the Tsaos began moving into the house. RLC says that for seventeen out of these twenty-two months the Tsaos intended to sell the house. Consequently, the dominant intent is not within the residential

exception.[4]

Some guidance concerning legislative policy is given by the treatment under the mechanics' lien law of a related problem, namely, whether realty conveyed to a bona fide purchaser for value may be subjected to a lien for antecedent debts. The statutory answer is "no," as to any type of improvements and not simply as to residences. *See* § 9–102(d) and (e).[5] Indeed, a mechanics' lien cannot be obtained for antecedent debts after equitable title to the property has passed from vendor to purchaser under a bona fide contract of purchase and sale, even if the petition to establish the mechanics' lien is filed before the deed is delivered. *See Himmighoefer v. Medallion Indus., Inc.,* 302 Md. 270, 487 A.2d 282 (1985).

The problem presented by this case is of limited scope. It arises only when an owner is having a home built on the owner's land, and there is a change of plan. Typically the property will be owned by two persons, a man and a woman. Their plans can change during the course of construction for a variety of everyday reasons. People die; they become disabled, physically or mentally; they lose their jobs; they invoke the bankruptcy laws; they divorce; they terminate relationships. Indeed, during the course of

---

4. Under this argument the five months during which RLC concedes that the Tsaos intended to reside in the house are October 1986 through February 1987. This argument assumes as a fact that the intent to sell was formed at the very time the Tsaos first noticed the cemetery. That assumption is contrary to an express fact-finding by the trial judge. We need not resolve whether the fact-finding is clearly erroneous because we do not adopt the totality of the circumstances approach as controlling.

5. RP § 9–102(d) and (e) read:
    "(d) *Exemptions.*—However, a building or the land on which the building is erected may not be subjected to a lien under this subtitle if, prior to the establishment of a lien in accordance with this subtitle, legal title has been granted to a bona fide purchaser for value.
    "(e) *Filing of petition constitutes notice to purchaser.*—The filing of a petition under § 9–105 shall constitute notice to a purchaser of the possibility of a lien being perfected under this subtitle."

construction a man and woman might intend to divorce or separate and to sell the house, then reconcile, and then repeat the cycle. In selecting the standard, "for [the owner's] own residence," the General Assembly surely did not intend to put on the lien claimant the burden of demonstrating a predominant intent over the entire course of construction in order to avoid the residential exception. Indeed, it is difficult enough to establish intent at the moment of the res gestae in the prosecution of some crimes. A construction of § 9–104(a)(2) which is heavily dependent on subjective intent or on tracing, over a long period of time, the conduct of persons with whom the claimant has no privity would not allow liens to be established, or the residential exception to be applied, with relative simplicity.

In this case RLC entered into a course of dealing with Marino under which RLC delivered materials to the job site on thirty days credit. When that arrangement began Marino was building a residence for the Tsaos on land owned by the Tsaos. RLC knew when it began to extend credit that, as matters stood and likely would remain, RLC's recourse would be only against Marino and that it could not lien the Tsaos' realty if the Tsaos paid Marino. The course of dealing continued uninterruptedly thereafter. That the Tsaos later decided to sell, and even later decided to occupy, had no effect on RLC's continued dealing under the course of conduct set in motion by its original decision to extend credit to Marino.

Construing the residential exemption to achieve a fair and workable legislative purpose, we hold that whether the improvements are "for [the owner's] own residence" is determined as of the time when the subcontractor commences an otherwise substantially uninterrupted performance of work for, or selling of materials to, the contractor.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT, THE REISTERSTOWN LUMBER COMPANY.