906 A.2d 945

Christopher MARTINO, d/b/a Do–It–All Construction, Inc.

v.

Manoochehr ARFAA, et ux.

No. 1795, Sept. Term, 2004.

Court of Special Appeals of Maryland.

Sept. 6, 2006.

Allan A. Noble (James K. Smith, on brief), Bethesda, for appellant.

Dottie Ferris Arfaa, Bel Air, for appellee.

Panel HOLLANDER, KRAUSER and MEREDITH, JJ.

MEREDITH, J.

In this mechanic's lien case, we conclude that the petitioner's description of the subject building in the petition to establish a mechanic's lien was legally adequate to survive a motion to dismiss. The petition at issue here was filed in the Circuit Court for Harford County by Christopher Martino, d/b/a Do–it–All Construction, Inc. ("Martino"), the appellant, seeking to establish a mechanic's lien against "the property located at 2310 Cullum Road, Bel Air, Maryland 21015–6539" for renovations and repairs Martino had performed there as a subcontractor. The property is owned by Manoochehr and Dottie Ferris Arfaa, the appellees, and the work performed by Martino on the Arfaas' property was done exclusively on their fire-damaged home.

Based upon the Arfaas' answer to Martino's petition, the circuit court dismissed the petition, concluding that the petition failed to include "a description adequate to identify the building," as required by Maryland Code (1974, 2003 Repl. Vol.), Real Property Article ("RP"), § 9–105(a)(1)(iv). Because Martino was by that point beyond the time for filing a new lien claim pursuant to RP § 9–105(a), the circuit court further concluded that the subcontractor could not supplement the building description by amending the petition pursuant to Maryland Rule 12–303, and consequently, it was the opinion of the circuit court that "the petition to establish a mechanic's lien should be dismissed as a matter of law." Because we disagree that Martino's description of the building was insufficient to satisfy the pleading requirements of RP § 9–105, we shall vacate the judgment of the circuit court and remand the case for further proceedings.

## Facts and Procedural Background

Dr. and Mrs. Arfaa own a residential property that has a street address of "2310 Cullum Road," in Bel Air, Harford County, Maryland. According to a print-out from the on-line records of the Maryland State Department of Assessments and Taxation ("SDAT"), a copy of which was attached as an exhibit to Martino's petition, the Arfaas' property has a mailing address of 2310 Cullum Rd, Bel Air MD 21015–6539. The SDAT print-out provides the following additional details regarding the subject property. The property was acquired by a deed dated 08/23/1985, having a recording reference of [Liber]1283/[folio]283. The property consists of 73.77 acres of land, and appears on tax map 57, grid 2E, as parcel 50. The property is improved by a primary structure, which, as of the then most recent update of the assessment records, was a two-story brick building built in 1920, having 4,552 square feet of enclosed space. The print-out made no mention of any accessory structures or additional buildings on the parcel of property.

On August 21, 2002, the Arfaas' house at 2310 Cullum Road was damaged by fire. The Arfaas hired Belfor USA Group, Inc. (not a party to this case) to oversee the repairs and renovations that were planned for their property. As the Arfaas' general contractor, Belfor entered into a contract with the Keith Parker Construction Company (not a party to this case) to perform the repair and renovation work. Parker Construction hired Martino as a subcontractor to perform a substantial portion of the renovation work on the 2310 Cullum Road house.

As of July 18, 2003, Martino had completed approximately nine weeks of work on the Arfaas' property. According to Martino's petition, the work performed by his company as a subcontractor "included extensive demolition work, reconstruction of numerous walls and rooms, framing of windows, framing of doorways, hallways, framing of chimney, construction of walls, installation of roof trusses, furring of hardwood floors, install[ation of] subflooring, construction of exterior

walls, construction of dormers, installation of skylights, etc."
Martino invoiced Parker $93,145 for work and materials, but
was paid only $23,650, which covered only the first three
weeks of work and left an unpaid balance due Martino in the
amount of $69,495.

On October 7, 2003, as required by RP § 9–104, Martino
served the Arfaas with a notice of Martino's intention to claim
a lien in the amount of $69,495. Attached to the notice were
copies of invoices addressed to "Keith Parker Construction,"
totaling $69,495. Although the invoices varied by week num-
ber and amount, they were otherwise identical in form and
content. They stated:

> This is an invoice for week [number] of demolition and
> rehabilitations on Dr. ARFAA's [sic] Home!
>
> There is a list of things that were done this past week, and
> the amount for the invoice.
>
> The amount for this invoice is [amount].
>
> See pages attached!

On December 29, 2003, within 180 days after the last day
Martino performed work on the Arfaas' property, Martino
filed in the Circuit Court for Harford County a petition to
establish a mechanic's lien. The petition stated, in part:

> NOW COMES the petitioner, Christopher Martino, d/b/a
> Do–It–All Construction, Inc .... and hereby petitions the
> Court to establish a mechanic's lien on the property located
> at 2310 Cullum Road, Bel Air, Maryland 21015, pursuant to
> Md.Code, Real Property, § 9–105 (2003). In support of this
> petition, the Petitioner hereby avers that the following facts
> are true to the best of his knowledge:
>
> 1. The property located in Harford County at 2310 Cullum
> Road, Bel Air, Maryland 21015–6539 is owned by Dr.
> Manoochehr Arfaa and Mrs. Dottie Arfaa (hereinafter
> referred to as "the Arfaas"). (*See* Exhibit A [the print-
> out from the records of SDAT] ).

2. This property is further identified as Map 57, Grid 2E, Parcel 50 by the Maryland Department of Taxation and Assessments. (*Id.*).

3. The property owned by the Arfaas is under renovation as a result of an insurance loss....

\* \* \*

7. Work was completed by [appellant] on or about July 18, 2003, and this Petition is timely filed in accordance with Md.Code, Real Property, § 9–105 (2003).

\* \* \*

10. The work performed by [appellant] included extensive demolition work, reconstruction of numerous walls and rooms, framing of windows, framing of doorways, hallways, framing of chimney, construction of walls, installation of roof trusses, furring of hardwood floors, installed subflooring, construction of exterior walls, construction of dormers, installation of skylights, etc. (*See* Exhibit B; *see also* Exhibit C, Photographs of work in progress).

\* \* \*

12. A copy of the Notice to Owner or Owner's Agent of Intention to Claim an [sic] Lien ... is attached hereto as Exhibit B. Additionally, evidence of the service by certified mail on the named property owner is included in Exhibit B. Additionally, a copy of the Notice was posted on the property in accordance with Md.Code, Real Property, § 9–104 (2003)....

\* \* \*

WHEREFORE, Petitioner respectfully requests that this Court impose a mechanic's lien in the amount of $69,495.00 on the property located at 2310 Cullum Road, Bel Air, Maryland 21015–6539 located in Harford County, Maryland.

Attached to the petition was the Maryland SDAT record describing the property, an affidavit of Martino, the notice to the Arfaas of the subcontractor's intention to claim a lien,

construction notes, invoices, and change orders. Exhibit C to the petition consisted of 47 pages of photocopies of photographs of the building in various stages of construction. There were three photographs on each page, *i.e.*, 141 photographs in all. The photographs depicted several views of the structure, and, as a group, show a very substantial—and possibly unique—home with distinctive architectural features such as very large columns, or pillars, at one facade.

On February 4, 2004, the Arfaas filed an answer to the petition, in which they denied having hired Martino, and further asserted that they had paid Belfor for any work claimed by Martino. In their answer, the Arfaas emphasized: "Dr. and Mrs. Arfaa are *NOT* in control of the business practices between Belfor USA/Inrecon and their subcontractors. *If the Petitioner was not paid by Keith Parker Construction Company, it has NO association with Dr. and Mrs. Arfaa's bona fide purchases of the value of the work completed at their property where they hold legal title.*" (Emphasis in original.) The Arfaas also attached to their answer a number of exhibits regarding their contractual relationship with Belfor.

On many of the exhibits attached by the Arfaas, their mailing address appears to be "2310 Cullum Rd., Bel Air, Md. 21015." Moreover, one of the exhibits, the work authorization for Belfor to proceed with the repairs, includes this reference to the subject property: "[The Arfaas] represent[ ] that [ ]they are owners of . . . the hereinafter specified property . . . and hereby authorize and direct Belfor USA Group, Inc. ('Contractor') to provide all labor, equipment and materials required to properly repair the specified real property, contents or structure commonly known as: 2310 Cullum Rd., Bel Air, MD. 21015." In other exhibits attached by the Arfaas, including correspondence from Dr. Arfaa to Belfor, the renovation project is referred to as "Job: 2310 Cullum Road, Bel Air, MD."

The exhibits attached to the Arfaas' answer also indicate that the Arfaas paid Belfor in excess of the amount claimed by

Martino subsequent to October 7, 2003, the date Martino served the Arfaas with notice of Martino's intent to claim a lien. Indeed, Dr. Arfaa's letter to Belfor dated January 7, 2004, not only enclosed a progress payment of $50,000, but also advised Belfor that the Arfaas had been served with Martino's petition, and disclaimed any "responsibility to pay for such monies owed to [Belfor's] subcontractors...."

On February 20, 2004, the circuit court ordered the Arfaas to show cause show why a lien should not attach to the property described in Martino's petition in the amount requested by that petition. The court scheduled a hearing for April 13, 2004.

Before the April 13th hearing began, Mrs. Arfaa, who served as counsel for the Arfaas, hand-delivered to Martino's counsel a sworn "Amended Answer to Petition for Mechanic's Lien." The amended answer asserted in part:

Neither the Petitioner's Notice or Petition describe the building upon which they desire a Mechanic's Lien, but merely state they want a Mechanic'[s] Lien on the property at 2310 Cullum Road, Bel Air, Maryland 21015. The Arfaa[s'] property consists of 73 + acres and it contains three separate buildings. The Petition must be dismissed as a matter of law because ... it fails on its face to describe the building or buildings and its location on the property.

... Additionally, the Petitioner's Petition for a Mechanic's Lien cannot be amended by leave of the court because it is beyond the 180 days deadline or [sic] any such amendment would materially alter the property that is the subject of the pleading.

Also on April 13, 2004, the court heard brief argument on the legal issues, and held the matter *sub curia.*

On June 8, 2004, the court issued a written memorandum and order that dismissed Martino's petition. After observing that, "[i]n general, the burden is on the claimant to establish its entitlement to a mechanic's lien," the court found that Martino had not satisfied that burden because his "petition fail[ed] to adequately identify the building upon which the lien

is sought." Although the petition included numerous exhibits, including invoices for the work performed, pictures of the work performed, and affidavits of service, the court noted that, "[w]ithin these exhibits, there is nothing which describes the building upon which the work was performed in a manner sufficient to identify the specific building." The court observed that the only reference to a specific building on the property was a statement in the affidavit of service that a copy of the "Notice to Owner or Owner's Agent of Intention to File a Lien" was served by posting on "the door of the *residence* located at 2310 Cullum Road" (emphasis added). That, the court declared, "is not sufficient." "[I]t is not clear from the pleadings," the court explained, "which of the three buildings on the property qualifies as the 'residence' of the [Arfaas]," and therefore, the court concluded, the petition does not "satisfy the requirement of a 'description adequate to identify the building' of Real Property § 9–105(a)(1)(iv).'"

Further, the court held, the petition could not be amended to more fully identify the building, because the time for filing such a "material" amendment had run. *See* RP § 9–112; Maryland Rule 12–303. Accordingly, the court dismissed the petition as "facially defective." It noted, however, that Martino's "claim for work done and/or materials furnished is still viable and this case should proceed to trial or other disposition on that claim."

Thereafter, Martino filed a motion for reconsideration. After that motion was denied by order dated July 28, 2004, Martino filed a Motion for Entry of Final Judgment. In that motion, Martino conceded that, apart from his claim for a subcontractor's mechanic's lien, "he does not have any direct contract claim against the Arfaas. For this reason, there is nothing left to adjudicate between the Plaintiff and these Defendants." Opposing that motion, the Arfaas argued that the court's "[o]rders of June 8 and July 28, 2004 [were] final judgments disposing of all of the in rem claims between all of the parties. . . ." The circuit court apparently agreed with Martino on this point, and, on October 12, 2004, entered "final judgment," after which Martino noted this appeal.

### Discussion

We must first review the timeliness of Martino's notice of appeal. After explaining why the appeal was timely filed, we shall review the requirements of RP § 9–105(a)(1)(iv), and explain why we conclude that Martino's petition set forth a legally adequate description of the land and building.

### 1. Timeliness of Appeal

 The Arfaas assert that Martino's appeal was not timely filed. If they were correct, we would be without jurisdiction to hear the appeal. Accordingly, we have reviewed the circuit court's orders and the docket entries to determine whether this appeal was timely filed. We have concluded that the appeal was timely, not because of the purported entry of "final judgment" on October 12, 2004, but rather because of the operation and effect of Maryland Rule 2–601. We explain.

 Rule 2–601(b) directs:

The clerk shall enter a judgment by making a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court, *and shall record the actual date of the entry. That date shall be the date of the judgment.*

(Emphasis added.) Consequently, it is not the date that the judge signs an order that controls the deadline for filing an appeal; nor is it the time-stamp date that is placed upon the order when it is filed with the clerk's office that controls. Pursuant to the plain language of Rule 2–601(b), the date of the judgment is the actual date on which the judgment is entered on the docket, and it is that date that begins the 30 day period for filing a notice of appeal pursuant to Rule 8–202(a).

In the present case, the circuit court judge signed an order reflecting that Martino's petition was "denied" on June 8, 2004. That order bears a stamp reflecting that the signed order was also "filed" on June 8, 2004. The docket entries, however, indicate that that order was entered on the docket on June 11, 2004. That latter date would have begun the time

for Martino to note an appeal if he had not filed a motion for reconsideration within ten days after June 11, 2004.

■ As permitted by Rule 2–535, Martino did file a motion for reconsideration of the court's June 8 order. That motion bears a stamp reflecting that it was filed with the clerk's office on June 17, 2004. Because that motion was filed within ten days after entry of the judgment on the docket, Rule 8–202(c) provides that the time for Martino to file a notice of appeal was extended until 30 days after disposition of the motion. *See* Committee Note to Rule 8–202, stating: "A motion filed pursuant to Rule 2–535, if filed within ten days after entry of judgment, will have the same effect as a motion filed pursuant to Rule 2–534, for purposes of this Rule. *Unnamed Atty. v. Attorney Griev. Comm'n*, 303 Md. 473, [486,] 494 A.2d 940 (1985); *Sieck v. Sieck*, 66 Md.App. 37, [42–44,] 502 A.2d 528 (1986)." *Accord Alitalia v. Tornillo*, 320 Md. 192, 200, 577 A.2d 34 (1990) ("a Rule 2–535 motion, if filed within 10 days of the entry of judgment by the court, will be treated as a Rule 2–534 motion and have the same effect on appeal time").

Rule 8–202(c) specifies that a post-judgment motion must be "filed," rather than "docketed," within the ten day time limit of 2–534 in order to stay the deadline for noting an appeal. Accordingly, Martino's motion for reconsideration, "filed" on June 17, 2004, suspended the time for noting an appeal even though the motion was not docketed until September 15, 2004.

The circuit court denied the motion for reconsideration by signing an order that was dated July 28, 2004. That order bears a stamp reflecting that it was "filed" with the clerk on July 28, 2004. Pursuant to Rule 2–601(b), however, the effective date of that order as a judgment was the date it was entered on the docket, *i.e.*, September 15, 2004. Martino's notice of appeal was filed on October 14, 2004, within 30 days after the clerk docketed the disposition of the motion for reconsideration. Accordingly, Martino's appeal was timely.

■ Before filing his notice of appeal, however, Martino, on September 17, 2004, filed a motion "pursuant to Maryland Rule 2–602(b) for the entry of final judgment," contending

that the court's comment about the possibility of Martino pursuing alternative claims "for work done and/or materials provided" left open an unresolved claim in the case. The Arfaas disagreed with that assertion, and so do we.

■ The only complaint filed by Martino in this case—the petition—has a single specific claim for relief, *viz.:* "Petitioner respectfully requests that this Court impose a mechanic's lien in the amount of $69,495.00 on the property located at 2310 Cullum Road, Bel Air, Maryland 21015–6539 located in Harford County, Maryland." Consequently, notwithstanding the circuit court's comment about not foreclosing the possibility of Martino pursuing alternative claims, no alternative claims for relief were ever asserted in the complaint in this case. The court's denial of the petition for a mechanic's lien, therefore, disposed of all pending claims against all served parties, and no further order pursuant to Rule 2–602 was required. Nor did the entry of such a surplus order in this case extend the time for filing an appeal. Because we have determined that Martino's notice of appeal was timely for other reasons, however, the entry of the "final judgment" order, docketed October 13, 2004, was a harmless nullity.

### 2. Sufficiency of Mechanic's Lien Petition

■ Martino contends that the circuit court erred in dismissing his Petition for Mechanic's Lien for failing to adequately describe the building as required by RP § 9–105(a)(1)(iv). We agree.

RP § 9–105(a) describes the information that must be included in a petition seeking a mechanic's lien. It provides:

... The proceedings shall be commenced by filing with the clerk, the following:

(1) A petition to establish the mechanic's lien, which shall set forth at least the following:

(i) The name and address of the petitioner;

(ii) The name and address of the owner;

(iii) The nature or kind of work done or the kind and amount of materials furnished, the time when the work was done or the materials furnished, the name of the person for whom the work was done or to whom the materials were furnished and the amount or sum claimed to be due, less any credit recognized by the petitioner;

**(iv) A description of the land, including a statement whether part of the land is located in another county, and a description adequate to identify the building;** and

(v) If the petitioner is a subcontractor, facts showing that the notice required under § 9–104 of this subtitle was properly mailed or served upon the owner, or, if so authorized, posted on the building. If the lien is sought to be established against two or more buildings on separate lots or parcels of land owned by the same person, the lien will be postponed to other mechanics' liens unless the petitioner designates the amount he claims is due him on each building;

(2) An affidavit by the petitioner or some person on his behalf, setting forth facts upon which the petitioner claims he is entitled to the lien in the amount specified; and

(3) Either original or sworn, certified or photostatic copies of material papers or parts thereof, if any, which constitute the basis of the lien claim, unless the absence thereof is explained in the affidavit.

(Emphasis added.)

The circuit court accepted the Arfaas' argument that Martino's petition was fatally deficient with respect to its description of the specific building upon which a lien was sought. After noting that the Arfaas had stated in their answer that "there are three separate buildings located on the property at 2310 Cullum Road," the court further observed that "[t]he Petitioner continually references the *property* upon which the work was completed, yet at no point does the petition specify a *building* upon which the work was performed and the materials were furnished." (Emphasis in original.) The court concluded that, even with the exhibits, "it is not clear from the

pleadings which of the three buildings on the property qualifies as the 'residence' of the [Arfaas]."

In response to Martino's motion for reconsideration, the circuit court maintained its position that the petition was inadequate as a matter of law, stating:

While the photographs attached to the petition may help to clarify the building upon which the lien was intended to be sought by the Petitioner, the photographs do not situate the building in a "reasonable local[e]" on the 73 acres of the Defendants' property, as noted in *Scott & Wimbrow v. Wisterco Inv., Inc.*, 36 Md.App. 274, 373 A.2d 965, 969–70 (1977). Further, the Court's reliance in the previous opinion on *Mervin L. Blades & Son, Inc. v. Lighthouse Sound Marina and Country Club*, 37 Md.App. 265, 377 A.2d 523 (1977) was not improper. In that case, a mechanic's lien was denied when a claim for a lien against a "building or buildings" was found noncompliant with the Maryland statutes. Here, the lien describes the "property" of the Defendants as the subject of the lien. Further, the photographs attached do not clearly distinguish the residence of the Defendants from any of the other buildings on their property.

We described the standard for appellate review of a grant of a motion to dismiss a mechanic's lien claim as follows in *Gravett v. Covenant Life Church*, 154 Md.App. 640, 645, 841 A.2d 342 (2004):

"The proper standard for reviewing the grant of a motion to dismiss is whether the trial court was legally correct. In reviewing the grant of a motion to dismiss, we must determine whether the complaint, on its face, discloses a legally sufficient cause of action." *Fioretti v. Md. State Bd. of Dental Exam'rs*, 351 Md. 66, 71–72, 716 A.2d 258 (1998) (citations omitted). In reviewing the complaint, we must "presume the truth of all well-pleaded facts in the complaint, along with any reasonable inferences derived therefrom." *Id.* at 72, 716 A.2d 258; *see also Bennett Heating & Air Conditioning, Inc. v. NationsBank of Md.*, 342 Md. 169,

174, 674 A.2d 534 (1996); *Faya v. Almaraz,* 329 Md. 435, 443, 620 A.2d 327 (1993); *Berman v. Karvounis,* 308 Md. 259, 264–65, 518 A.2d 726 (1987). "Dismissal is proper only if the facts and allegations, so viewed, would nevertheless fail to afford plaintiff relief if proven." *Faya,* 329 Md. at 443, 620 A.2d 327; *see also Bobo v. State,* 346 Md. 706, 709, 697 A.2d 1371 (1997).

In our view, in light of the legislature's express statement in RP § 9–112 that the mechanic's lien statute "is remedial and shall be so construed to give effect to its purpose," the circuit court erred in concluding that Martino's description of the building was so woefully inadequate as to require dismissal of the petition.

The need for a liberal construction of the mechanic's lien law for the protection of subcontractors was explained by Judge Wilner, writing for the Court of Appeals in *Winkler v. Jerome,* 355 Md. 231, 246–47, 734 A.2d 212 (1999):

The mechanic's lien law has historically been construed "in the most liberal and comprehensive manner in favor of mechanics and materialmen." *T. Dan Kolker, Inc. v. Shure,* 209 Md. 290, 296, 121 A.2d 223, 226 (1956) and cases cited therein. Indeed, the law itself provides that it is remedial and is to be construed to give effect to its purpose. § 9–112. The need for a liberal construction is particularly important with respect to subcontractors who, though benefitting the owner and enhancing the value of the owner's property by the provision of their labor or materials, have no direct contractual relationship with the owner and therefore cannot otherwise subject the owner's property or assets to the payment of their claims. That bent of the statute in favor of subcontractors has always been subject to the caveat, however, that, as a mechanic's lien was unknown at common law and is purely a creature of statute, it is "obtainable only if the requirements of the statute are complied with." *Freeform Pools v. Strawbridge,* 228 Md. 297, 301, 179 A.2d 683, 685 (1962); *Aviles v. Eshelman Elec. Corp.,* 281 Md. 529, 536, 379 A.2d 1227, 1231 (1977).

The Court further stated in *Winkler, id.* at 251–52, 734 A.2d 212:

> We adhere to the view that, in general, the burden is on the claimant to establish its entitlement to a lien and that the owner bears no ultimate burden to negate that entitlement. We also believe, however, as we held in *Reisterstown Lumber v. Tsao, supra,* 319 Md. 623, 574 A.2d 307, that the mechanic's lien law should not be construed in such a way as to make the burden on the claimant so difficult as effectively to withdraw the remedy that the Legislature has clearly provided. . . .

Accordingly, we are called upon to interpret the statute in a manner that does not absolve the subcontractor of his obligation to satisfy the statutory requirements for obtaining the lien, and at the same time, does not make that burden so onerous that the remedy is effectively withdrawn. The specific statutory requirement as to which the circuit court found Martino's petition lacking was the requirement that the petition include "[a] description of the land, including a statement whether part of the land is located in another county, and a description adequate to identify the building." Mindful that this case was disposed of on the Arfaas' motion to dismiss, we agree with Martino that his petition was sufficient to state a prima facie claim that he was entitled to a subcontractor's mechanic's lien on the property known as 2310 Cullum Road, Bel Air, Maryland 21015–6539 located in Harford County, Maryland. The petition's inclusion of the mailing address for the Arfaas' residence (with both a street number and a 9 digit zip code), as well as a tax map parcel number, and a print-out from the SDAT with unique descriptive information, together with 141 photographs depicting distinctive features of the subject structure, were sufficient to survive a motion to dismiss. *Cf. Johns Hopkins Hosp. v. Pepper,* 346 Md. 679, 698, 697 A.2d 1358 (1997) ("Under our liberal rules of pleading, a plaintiff need only state such facts in his or her complaint as are necessary to show an entitlement to relief. Md. Rule 2–303(b)"). The photographs incorporated by reference into the petition were as effective in describing the distinctive features

of the subject building as a narrative description would have been. *Cf.* Rule 2–303(d) ("A copy of any written instrument that is an exhibit to a pleading is a part thereof for all purposes.").

The Arfaas' reference in their answer to "three separate buildings" on the property was a red herring. The Arfaas never described the other two buildings, never asserted that there are three "houses" at 2310 Cullum Road, and never asserted that more than one building on their property resembled in any way the structure shown in the 141 photographs. That structure was a distinctive, large home, with large columns on one facade. Given the fact that the Arfaas' property was referred to as "agricultural" on the SDAT print-out, the other two buildings may well have been a barn and a storage shed. (And the structure shown in the 141 photographs could not be confused with such ancillary buildings.) At most, the Arfaas' reference to additional buildings on the property introduced disputed facts beyond the four corners of the petition, and was not a reason to enter a final order denying the lien pursuant to RP § 9–106(b)(2). *Cf. Tyson v. Masten Lumber & Supply*, 44 Md.App. 293, 303, 408 A.2d 1051 ("At that [show cause hearing] stage, the court is to decide whether there is a genuine dispute of a material fact."), *cert. denied*, 287 Md. 758 (1980).

Similarly, the Arfaas' emphasis of the fact that their lot was a 73+ acre parcel was not a sufficient reason for the circuit court to deny the lien altogether. Even though the lien statute still refers to establishing a lien against the "building," there is generally no separate registration of title for building improvements in Maryland (notable exceptions being condominiums and time shares), and the transfer of ownership of a house such as the Arfaas' is generally effected by a conveyance of title to the underlying land. Accordingly, a conveyance of the Arfaas' house would normally be accomplished by a deed conveying the same 73+ acre parcel they purchased in 1985 "together with the improvements thereon." In the wake of modern subdivision laws enacted over the past few decades, if less than the entire acreage is to be conveyed, an owner of a

large parcel of land must subdivide the parcel in order to convey a legal lot. Consequently, we cannot say, based upon the record in this case, that Martino's petition claiming a lien against the Arfaas' entire parcel was either an excessive claim or defectively imprecise.

Additionally, the mechanic's lien statute and Maryland Rules set forth a procedure for defining the boundaries of the land to be subject to the lien if the entire parcel on which the subject building is located contains more land than is reasonably necessary for the use and enjoyment of the building. The boundaries of the property to which the lien will attach can be designated pursuant to RP § 9–103, which provides, in part [1]:

(a) A lien established in accordance with this subtitle shall extend to the land covered by the building and to as much other land, immediately adjacent and belonging in like manner to the owner of the building, as may be necessary for the ordinary and useful purposes of the building. The quantity and boundaries of the land may be designated as provided in this section.

(b) An owner of any land who desires to erect any building or to contract with any person for its erection may define, in writing, the boundaries of the land appurtenant to the building before the commencement of construction, and then file the boundaries for record with the clerk of the circuit court for the county. The designation of boundaries shall be binding on all persons. If the boundaries are not designated before the commencement of a building, the owner of the land or any person having a lien or encumbrance on the land by mortgage, judgment, or otherwise

---

1. We have found no case that addresses the interplay between RP § 9–103 and any applicable local subdivision regulations that specify what must be done in order to legally subdivide a parcel of property into two or more legal lots. We need not resolve any conflict between the provisions at this stage of this case. It is sufficient for our purposes to note that the mere fact that the lien claimant seeks to impose a lien upon a large parcel of land surrounding the building is not, in and of itself, a fatal defect in the petition.

entitled to establish a lien in accordance with this subtitle may apply, by written petition, to the circuit court for the county to designate the boundaries.

Implementing RP § 9–103, Maryland Rule 12–308 sets out the procedures to be followed to designate the boundaries of the subject parcel.[2]

---

2. Rule 12–308 provides:

**RULE 12–308. Designation of Boundaries**

(a) **Before Commencement of Construction.** An owner of land who, before commencement of construction, desires to define the boundaries of the land in accordance with Code, Real Property Article, § 9–103(b) shall file a notice to establish boundaries in an ex parte proceeding in the county in which the property is located. The notice shall be captioned, filed, and indexed as any other civil action under the name of the owner of the land and shall contain:

(1) a reference to the conveyance or other means by which the owner acquired title to the land;

(2) a description of the newly established boundaries sufficient to identify the land with reasonable certainty; and

(3) a brief description of the construction for which the boundaries are established.

(b) **After Commencement of Construction.**

(1) *Motion.* After the commencement of construction of any improvement upon land that might be subject to a claim for a mechanics' lien, the owner of the land or any other person interested in the land, including anyone who has or might assert a mechanics' lien against the land by reason of the construction, may file a motion in the circuit court for the county where the land is located requesting the court to designate the boundaries pursuant to this Rule and to issue a writ of survey for that purpose. If the person filing the motion is a party to a proceeding to establish or enforce the lien, the motion shall be filed in the first proceeding to which the person became a party.

(2) *Parties.* A motion filed under this section shall be served on the owner of the land, each person who has moved for or established a mechanics' lien against the land, and any other person designated by the court in accordance with Rule 2–121, except that if the motion is filed in a pending proceeding, it shall be served in accordance with Rule 1–321.

(3) *Surveyor.* The court shall issue a writ to a surveyor directing the surveyor to make a report to the court in which the surveyor shall determine and describe the boundaries of the land, including within the boundaries as much of the land as is necessary for the use of the improvement thereon for the purpose for which it is designated or reasonably adaptable.

(4) *Action on Report.* A copy of the surveyor's report shall be furnished to the moving party and to each person required to be served under section (b)(2) of this Rule. Within 15 days thereafter any person to

In *Bounds v. Nuttle*, 181 Md. 400, 410, 30 A.2d 263 (1943), the circuit court applied the principle of limiting the amount of land to which the lien would attach. In that case, the entire tract of land was 30.45 acres, but the parties stipulated, after having the property surveyed, that 1.75 acres "was the proper amount of land to be sold for the ordinary and useful purposes of the new building."

Similarly, in *Filston Farm Co. v. Henderson*, 106 Md. 335, 372–76, 67 A. 228 (1907), the Court of Appeals held that the land subject to the mechanic's lien established in connection with the construction of a school building should be limited to 200 acres, rather than the entire 1,293 acres owned by the school. The Court noted that "the extent of the lien should be determined by the ordinary and probable uses to which [the building] will be put." *Id.* at 374, 67 A. 228.

The Court of Appeals declined to reverse an order for the sale of property subject to a mechanic's lien when the property owner alleged too much property had been liened in *Fulton v. Parlett*, 104 Md. 62, 64 A. 58 (1906). Pointing out that the owner had failed to take advantage of the statute's procedures for designating boundaries, the Court held that the material-man's claim for a lien against excess land at the time the lien was filed was not fatal to the validity of the lien, stating, *id.* at 69–70, 64 A. 58:

> It is insisted that the decree is wrong because more land was directed to be sold than was necessary for the ordinary and useful purposes of the buildings. Not only does a mechanics' lien attach to the buildings but it extends also to the ground covered by such buildings and to so much other ground immediately adjacent thereto and belonging in like manner to the owner of such buildings as may be necessary for the ordinary and useful purposes of such building. *Code*

whom the surveyor's report is required to be furnished may file a motion requesting the court to determine boundaries other than those that the surveyor has reported. After a hearing on the motion or upon expiration of the 15 day period for filing a motion if no motion is filed, the court shall determine the boundaries or approve the surveyor's report for filing in the proceedings.

1904, *Art.* 63, *sec. 4.* The manner in which the quantity and the boundaries of such contiguous ground shall be ascertained is prescribed by *secs. 5, 6, 7* and *8.* By *sec.* 5 the owner of the land may, prior to the commencement of the work on the building, define in writing the boundaries of the curtilage appurtenant to the building and file the same with the Clerk of the Circuit Court for the county in which the land lies, "and such designation of boundaries shall be obligatory upon all persons concerned." In default of such designation by the owner, then under *sec. 6,* "it shall be lawful for the owner * * * or for any person * * * entitled to a lien by virtue of this article, to apply by petition in writing to the Judge of the Circuit Court for the county * * * to designate the boundaries;" and *sec. 7* directs what shall be done when such a petition has been filed. In the pending case the owner did not designate under *sec. 5* any boundaries prior to work being commenced on the buildings; nor did the owner or the claimant file a petition under *sec. 6* to have the boundaries defined in the manner prescribed in *sec. 7.* By *sec. 8* it is declared that "if any proceedings shall be instituted to enforce any lien under this article before the boundaries of the lot, land or curtilage which ought to be appurtenant thereto shall be designated, it shall be lawful for the Court upon application to stay such proceedings until such designation shall be made * * *." No application was made to the Court under this section. There was [sic] three opportunities open to the owner for marking the boundaries of the curtilage which ought to be appurtenant to the buildings, and not one of them was availed of. If the decree should be reversed because the boundaries had not been designated, then the failure of the owner to exercise a right in this particular which she ought to have resorted to before the decree was signed, will be treated as an error in the decree itself. The owner's own default would then vacate the decree. It was within the power of the owner before the decree was passed to prevent its passage until after the boundaries had been defined if she had proceeded under *sec. 8;* and her neglect to rely on the provisions of

that section cannot be assigned as a valid reason for reversing the decree. There was evidence adduced tending to prove that the whole of the tract of land owned by Mrs. Fulton was necessary for the ordinary and useful purposes of the buildings and improvements, and there was also evidence to the contrary. The decree directed only the six acre parcel to be sold. We cannot say there was any error in this; and the owner must be held to have waived all objection to the decree founded on the omission to demark the boundaries, because she neglected to invoke in due season the provisions of the sections to which we have alluded.

The Court of Appeals applied a similar rule in *Caltrider v. Isberg,* 148 Md. 657, 130 A. 53 (1925), again holding that the fact that the lien claimant had filed for a lien against more land than was necessary for the ordinary and useful purpose of the subject dwelling houses did not invalidate the lien. Noting that the chancellor had dismissed the lien claim because of "[i]nsufficiency of description of the property," the Court of Appeals stated that that reason "is not in our opinion valid." *Id.* at 663, 130 A. 53. The Court continued, *id.:*

The claim as filed describes several lots by numbers designated upon a plat duly recorded among the land records of Harford County, the liber and folio being given, and also refers to the deeds by which they were conveyed. It was not necessary to state specifically that they were contiguous lots, and the fact that they may have contained more land than was necessary does not affect the validity of the lien. Provision is made by sections 5, 6, 7 and 8 of article 63 of the Code for having proper boundaries fixed on proper application by the owner both before and pending proceedings for the enforcement of a mechanic's lien and, if he fails to avail himself of these provisions, he cannot avoid the lien merely because too much land is claimed. *Fulton v. Parlett,* 104 Md. at 70, 64 A. 58.

In holding that Martino's petition was inadequate as a matter of law, the circuit court relied primarily on two 1977 cases that were decided by this Court in the wake of the 1976

revisions to Maryland's mechanic's lien statute, made necessary by the ruling in *Barry Properties v. Fick Bros.*, 277 Md. 15, 353 A.2d 222 (1976). In *Barry*, the Court of Appeals declared unconstitutional the provisions in the former statute that (a) made the lien effective immediately upon performance of the work and (b) permitted the claimant to simply file a statement of the lien with the clerk of court.[3]

The year after *Barry Properties* was decided, two cases from this Court held that the respective lien claimants had failed to provide adequate descriptions in their petitions of the property that was to be subject to the liens. *Mervin L. Blades & Son v. Lighthouse*, 37 Md.App. 265, 377 A.2d 523 (1977), and *Scott & Wimbrow v. Wisterco Inv., Inc.*, 36 Md. App. 274, 373 A.2d 965, *cert. denied*, 281 Md. 743 (1977). In the *Scott & Wimbrow* case, the contractor filed a petition claiming a lien "against 'the structures at Lighthouse Sound,

---

**3.** The Court of Appeals summarized the pre-*Barry* scheme in *Winkler, supra*, 355 Md. at 247, 734 A.2d 212:

> Prior to 1976, a mechanic's lien attached automatically as soon as the work was done or the materials were provided. That lien, created by operation of law, lasted for six months and could be extended simply by the contractor or subcontractor filing a claim with the clerk of the circuit court. *See Barry Properties v. Fick Bros.*, 277 Md. 15, 19, 353 A.2d 222, 226 (1976). Upon that *ex parte* filing, the lien continued for an additional year, subject to the claimant's suing to enforce it or the owner or other interested person suing to compel the claimant to prove the validity of the claim. Theoretically, the lien could exist for as long as 18 months before the claimant was required to prove the underlying basis for it. The only condition, in the case of a subcontractor who did not deal directly with the owner, was that the subcontractor give written notice to the owner within 90 days after furnishing the work or material. The function of that notice was to allow the owner to protect itself by withholding the amount of the claim from what otherwise would be due to the prime contractor, subject to later resolution or adjudication.

Prior to *Barry*, the lien attached before the owner had any opportunity for objecting, for demanding judicial review, or for taking discovery regarding the claimed lien. Under the current mechanic's lien procedures, the property owner enjoys those safeguards against the imposition of an unfounded lien. As the Court of Appeals stated in *Winkler, supra*, 355 Md. at 256 n. 8, 734 A.2d 212: "The Legislature and this Court have given owners a fair and easy opportunity to prevent the establishment of a lien at that preliminary stage by simply filing an answer."

St. Martins Neck, Maryland,'" *id.* at 277, 373 A.2d 965, and attached a deed containing metes and bounds descriptions of three parcels. The parcel denominated "Lighthouse Sound" consisted of 713 acres. No photographs or further description of the subject buildings were included in the petition. This Court agreed with the circuit court's conclusion that the description of the buildings was so lacking in specificity that the owner's demurrer was properly sustained. In the *Mervin Blades* case, which involved the same Lighthouse Sound property, the claimant alleged in its petition that it had furnished labor and materials "in connection with the construction of 'a main core and tennis court building or buildings,'" and referred to a deed as providing the property description, which, this time was described as 770 acres of land. *Id.* at 271, 377 A.2d 523. No photographs or narrative description of the building or buildings were provided. Again, the circuit court sustained a demurrer, and this Court affirmed, noting that, in the petition, "[t]here is utterly no description of any building, from which anyone could undertake to identify a building." *Id.* at 274, 373 A.2d 965.

As noted previously, Martino's petition included significantly more information describing the Arfaas' renovated house than the lien claimants provided in either of the Lighthouse Sound cases. Unlike the claimants in those cases, Martino's petition included street addresses with street numbers and the nine-digit zip code used by the postal service, and by the Arfaas themselves, in describing the location of their home. The addresses, combined with the information in the SDAT printout and the 141 photographs, were sufficient to enable interested parties to identify the land and the building that were the subject of the lien claim. We conclude that Martino sufficiently pled a prima facie claim for a subcontractor's mechanic's lien. Accordingly, we shall vacate the judgment of the circuit court and remand the case for further proceedings.

**JUDGMENT VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.**